STATE OF HAWAII, Plaintiff-Appellant *v.* STEVEN PAUL BOGDANOFF, Defendant-Appellee

NO. 6142

OCTOBER 19, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY OGATA, J.

The State appeals from the dismissal of six criminal charges pending against defendant-appellee Steven Paul

Bogdanoff (hereinafter appellee). The primary dispute involves the propriety of the trial court's finding that a key prosecution witness was incredible as a matter of law. This finding resulted in the trial court's conclusion that the key witness was consequently incompetent to testify against the defendant in later trials involving additional offenses.

We reverse.

Appellee was charged by information with four counts of Promoting a Dangerous Drug in the Second Degree[1] (Counts I, II, III and VI) and three counts of Promoting a Dangerous Drug in the First Degree[2] (Counts IV, V and VII). By order dated October 8, 1975, appellee's motion for severance of counts was granted, and five separate trials were ordered for the charges specified in the information.[3] Appellee was tried before a jury on Count I on February 23, 24, and 25, 1976.

A key witness at that trial was a police informant named Jimmy D. Harrison. Harrison had "set up" and had been present at all of the alleged sales of cocaine for which appellee had been charged. Harrison was an admitted cocaine dealer who was arrested in 1974 for selling cocaine to an undercover police officer. While incarcerated at Halawa Jail awaiting trial for that offense, Harrison was approached by Honolulu police detectives who asked him to assist them in pinpointing and arresting narcotics dealers on the North Shore of Oahu. The detectives told Harrison that, in return, they would attempt to have all charges against him dropped. Harrison agreed to cooperate with the police, and he thereafter succeeded in "setting up" sales of narcotics to undercover police officers by three individuals, one of whom was appellee.

---

[1] See § 1242(1)(c), c. 9, S.L.H. 1972 (currently designated HRS § 712-1242(1)(c) (1976)).

[2] See § 1241(1)(b)(ii)(A), c. 9, S.L.H. 1972 (currently designated HRS § 712-1241(1)(b)(ii)(A) (1976) ).

[3] The court below ordered that the seven charges be tried in the following sequence: Count I; Count II; Counts III and IV; Count V; Counts VI and VII.

As hereinafter set forth, an unusual series of circumstances then unfolded both before and during appellee's trial on Count I.

Subsequent to appellee's arrest, David S. Hobler, counsel for appellee, sent Harrison a letter in which Hobler asked whether, among other things, Harrison had ever seen any police officer taking drugs. In answer to this question, Harrison informed Hobler both orally and in writing that he had seen Officer Randall Akana using marijuana. Officer Akana was one of the undercover police officers with whom Harrison had worked, and he was the officer to whom appellee allegedly sold cocaine, resulting in appellee's arrest on the charge set forth in Count I.

During the trial on Count I, Harrison was called to testify as a witness for the State. On cross-examination, he acknowledged that he never really saw Officer Akana using marijuana and that his (Harrison's) oral and written statements to the contrary were lies. On redirect, Harrison explained that he had earlier lied about Akana using marijuana because of threats made to him by a person who had contacted him by telephone and who had identified himself as David Hobler. Harrison indicated that the person who had identified himself as Hobler threatened to harm him and his family if certain answers favorable to the defense were not submitted by Harrison to Hobler.

To rebut this testimony that he had threatened Harrison and his family, Hobler received permission from the trial court to testify as a witness after all other defense evidence had been presented. Arrangements were made to have an attorney not involved in the trial examine Hobler on the specific question of whether Hobler had ever telephoned Harrison and made any kind of threats against him. The court also instructed the prosecutor that cross-examination would be limited to whether Hobler had made telephone calls to Harrison prior to June 18, 1975 (the date on which Harrison responded in writing to Hobler's letter) in which threats were made against Harrison.

The prosecutor objected to this limitation of the scope of cross-examination and sought permission to question Hobler

regarding telephone calls made subsequent to June 18, 1975. The prosecutor explained that such examination was necessary in order to attack Hobler's credibility and to show bias. The trial court inquired as to how examination regarding telephone calls made by Hobler subsequent to June 18, 1975, would test Hobler's credibility, and the following discourse between the court and the prosecutor (Mr. Gibson) resulted:

> MR. GIBSON: Okay, I will tell you because after . . ., there were conversations that Mr. Harrison will testify to, . . ., [in which] Mr. Hobler was told by Mr. Harrison he was afraid of [Police Detective] Bobby Schmidt and that he was going to lie if he ever was asked under oath about what he said in the letters because of his fear of Bobby Schmidt. And Mr. Hobler, according to Mr. Harrison now, says that Mr. Hobler was out to get Bobby Schmidt and Randall Akana. I believe that shows bias.

> THE COURT: Just a moment, let me get that very clear. Mr. Harrison told Mr. Hobler that because of a fear of Bobby Schmidt he was going to lie about what he wrote in the June 18th letter?

> MR. GIBSON: That's right, your Honor. That is what Mr. Harrison had told me.

> THE COURT: Right, and now we have two stories placed before the Court, without the jury being present as to why he lied in the letter.

> \*     \*     \*     \*

The conversation between the court and the prosecutor later continued as follows:

> MR. GIBSON: I would also be impeaching Mr. Hobler.

> THE COURT: Why?

> MR. GIBSON: Because Mr. Hobler, because the fact would come out that Mr. Hobler . . . stated to Mr. Harrison that he was out to get Bobby Schmidt and Randall Akana. It would go to show that he has another interest.

THE COURT: That who was out?

MR. GIBSON: Mr. Hobler.

THE COURT: So what?

MR. GIBSON: It goes to his credibility, your Honor. He's got an interest, monetary interest in this case. He's got an interest in this case because he wants to get Bobby Schmidt and Randall Akana.

\*    \*    \*    \*

THE COURT: Did Mr. Harrison also tell you that he would say that because he was afraid of Bobby Schmidt that he was lying about what he said in that letter?

MR. GIBSON: No, he told me that he was lying in the letter because he had been threatened and his family had been threatened, your Honor. That's why he lied in the letter but that's not the reason he gave to Mr. Hobler. The reason he gave to Mr. Hobler was that he was afraid of Bobby Schmidt which all goes to this whole same thing, was Mr. Hobler intimidating in one fashion or another Mr. Harrison. Intimidating to the point where he [Harrison] would even lie as to why he was lying.

As a result of the information revealed during this discourse, the trial court came to the conclusion that witness Harrison was "completely incredible." In response to the prosecutor's inquiry as to exactly why the court found Harrison to be an "incredible witness", the court stated:

Because of the representations, because of his testimony on oath with respect to why he lied in the letter to Mr. Hobler dated June 18, 1975, and also because of the representations *made by the prosecutor* with respect to another reason for Mr. Harrison to state that he lied in that letter that he was afraid of Bobby Schmidt. The Court finds that Mr. Harrison's testimony is completely incredible. [Emphasis supplied.]

Due to its finding that Harrison, a key witness for the prosecution, was not credible as a matter of law, the trial

court granted a defense motion for acquittal as to Count I. For the same reason, the trial court, on its own motion, went on to dismiss the remaining six charges pending against appellee.

The State appeals from the decision of the trial court dismissing Counts II through VII.[4]

I

The trial court's decision to dismiss Counts II through VII because Harrison was "completely incredible" reflects a finding that Harrison was incompetent to testify as a witness in those remaining cases. The trial court evidently concluded that because Harrison was a key witness for the prosecution, his incompetence to testify in those cases would preclude the State from even presenting a prima facie case against appellee on those charges still pending against him.

This Court has previously stated that the jury is the sole judge of the credibility of witnesses. *State v. Johnston,* 51 Haw. 195, 197, 456 P.2d 805, 807, *rehearing denied,* 51 Haw. 259, 456 P.2d 805 (1969), *appeal dismissed,* 397 U.S. 336 (1970); *State v. Kekaualua,* 50 Haw. 130, 132, 433 P.2d 131, 133 (1967). This is the rule which applies when a party seeks review of a jury's apparent determinations as to which witnesses are to be believed. The appellate court will not interfere with a jury's findings as to the credibility of witnesses.

The instant case involves a situation, however, in which the trial court, prior to even allowing the case to go to the jury, ruled on its own motion that the witness was incredible as a matter of law. Hence, the jury was given no opportunity to pass upon the credibility of the witness. The more generally applicable rule, therefore, is that it is the jury's function to determine the credibility of the evidence even though it may be arguably contradictory or unreasonable, *unless* the witness's testimony is either inherently improbable or incredi-

---

[4] The State agrees that it is precluded on double jeopardy grounds from taking an appeal from the acquittal granted as to Count I.

ble. *United States v. Brooks,* 349 F.Supp. 168, 171 (S.D.N.Y. 1972); *State v. McFarland,* 369 A.2d 227, 229 (Me. 1977); *People v. Dilworth,* 274 Cal.App.2d 27, 34, 78 Cal.Rptr. 817, 821 (1969), *cert. denied,* 397 U.S. 1001 (1970). The court below apparently found Harrison's testimony to be "inherently improbable and incredible", and it thus precluded the jury from passing upon Harrison's credibility.

We are of the opinion that the court below was not justified in finding, under the state of the facts presented to it, that Harrison's testimony was so "inherently improbable and incredible". The trial court's decision was based upon two inconsistent statements assertedly made by Harrison. One of these statements was made under oath during the trial, while the other was a hearsay statement not made under oath. The prosecutor merely related the fact that the latter statement was made by Harrison. However, Harrison himself was never questioned under oath regarding the latter statement. The trial court instead appears to have simply assured itself that the out-of-court statement attributed by the prosecutor to Harrison was in fact made and that it was made under the circumstances related by the prosecutor. Harrison was never himself given the opportunity to explain the context and reasons related to the making of that statement.

Absent a full examination of Harrison under oath so as to verify the content of — and reasons for — his latter statement, it is doubtful that the trial court possessed sufficient information to justify the finding that Harrison was completely incredible as a matter of law. We hold for this reason that the trial court proceeded improperly in determining, upon the state of the facts presented to it, that Harrison's entire testimony was inherently improbable and incredible.

There is an additional reason for our concluding that the trial court erred in precluding the jury from deciding upon Harrison's credibility. The trial court found Harrison to be incredible because of the two inconsistent statements which he is said to have made. These inconsistent statements related to his reasons for lying about Officer Ākana using marijuana. However, these statements had no *substantive* connection with Harrison's testimony regarding the events

and circumstances relating to the crimes with which appellee was charged.

As stated in *United States v. Tropiano,* 418 F.2d 1069, 1074 (2d Cir. 1969), *cert. denied,* 397 U.S. 1021 (1970):

> A witness may be inaccurate, contradictory and even untruthful in some respects and yet be entirely credible in the essentials of his testimony.

The jury could and should have been informed of the asserted inconsistencies and peculiarities of Harrison's purported statements relating to his reasons for lying about Officer Akana.[5] The jury, under proper instruction, could then have appraised Harrison's credibility in light of his purportedly contradictory statements. It could then have weighed that credibility determination against Harrison's testimony concerning the substantive aspects of appellee's alleged offenses. *United States v. Tropiano, supra.*

By finding Harrison to be incredible as a result of certain inconsistencies in collateral matters, the trial court concluded that Harrison was incapable of testifying truthfully with regard to the substantive aspects of the offenses charged. Such action went far in circumventing the jury's proper function. A trial court should exercise careful judgment and restraint when presented with testimony which it is tempted to find incredible or improbable as a matter of law. The determination of the credibility of witnesses is still primarily a function of the jury, not the trial court. *See United States v. Weinstein,* 452 F.2d 704, 713-14 (2d Cir. 1971), *cert. denied,* 406 U.S. 917 (1972); *United States v. Williams,* 447 F.2d 894, 902 (5th Cir. 1971); *State v. Reardon,* 172 Conn. 593, 596, 376 A.2d 65, 67 (1977).

In view of our finding that the court below erred in finding Harrison to be incredible as a matter of law, we hold that the resultant decision that Harrison was incompetent to testify in

---

[5] It would have been a simple matter for the trial court to have had Harrison recalled and examined by both counsel before the jury as to whether he did in fact make the latter statement, and, if he did, his reasons for making two contradicting statements explaining his lying about Officer Akana. *Cf. State v. Ward,* 98 Idaho 571, 574, 569 P.2d 916, 919 (1977).

the subsequent trials was clearly erroneous.[6] Harrison should have been allowed to testify in those cases, and his credibility would have been left to the scrutiny of the jury in each of those trials.

## II

Both the State and appellee have raised several issues relating to the question of entrapment. However, the trial court made no findings whatsoever as to appellee's defense of entrapment. The court's decision was based entirely upon the finding that Harrison was "completely incredible" and thus incompetent to testify in appellee's subsequent trials. Therefore, we do not consider the points raised by the parties relating to entrapment.

Reversed and remanded for trial on Counts II through VII.

*Arthur Ross,* Deputy Prosecuting Attorney, for plaintiff-appellant.

*David Hobler* for defendant-appellee.

---

[6] A determination by a trial court regarding the competence of a witness to testify is conclusive unless it appears that the court's ruling was clearly erroneous. *State v. Dameg,* 51 Haw. 308, 309, 459 P.2d 193, 194 (1969); *Cornfeldt v. Tongen,* ——— Minn. ———, ———, 262 N.W.2d 684, 692 (1977); *Dunn v. State Highway Board,* 135 Vt. 26, 28, 370 A.2d 626, 629 (1977).