STATE OF HAWAII, Plaintiff-Appellee, *v.* ROTHWELL K. NAEOLE and ROBIN SIDNEY SAYA, Defendants-Appellants

NO. 6580

OCTOBER 3, 1980

RICHARDSON, C.J., OGATA AND MENOR, JJ.,
RETIRED JUSTICES MARUMOTO AND KOBAYASHI,
ASSIGNED BY REASON OF VACANCIES

564

OPINION OF THE COURT BY MENOR, J.

Defendant Saya was convicted on one count of murder under HRS § 707-701 (1976), on six counts of attempted murder under HRS §§ 705-500 and 707-701 (1976), and of carrying a firearm on his person without a permit under HRS § 134-9 (1976). Defendant Naeole was convicted of carrying a firearm without a permit or license under HRS § 134-9 (1976). Both defendants' motions for judgment of acquittal and a new trial were denied by the trial court. They now appeal from the judgments and sentences of the trial court.

The charges against the defendants arose from a shooting episode which occurred on January 2, 1976, at Tommy's Lounge, a bar on North Hotel Street in downtown Honolulu. One of the victims of the shooting was Joseph Miha who died from his injuries. The others with varying degrees of gunshot wounds were Ernest Miranda, Walter Kaeo, Police Officer Jonathan Almadova, Theresa Manalo, Hiroshi Miyashiro and the bar owner, Satoshi Tomasa.

 

## I.

We consider first the defendants' contention that their convictions were not supported by substantial evidence. *See State v. Laurie*, 56 Haw. 664, 548 P.2d 271 (1976); *State v. Cannon*, 56 Haw. 161, 532 P.2d 391 (1975).

"Substantial evidence" as to every essential element of the crime charged is credible evidence which is of sufficient quality and probative value to enable a man of reasonable caution to reach a conclusion. *Shinn v. Yee, Ltd.*, 57 Haw. 215, 219, 533 P.2d 733, 737 (1976). It is evidence which a reasonable mind might accept as adequate to support such a conclusion. *State v. Merseal*, 167 Mont. 412, 538 P.2d 1366 (1975). And whether substantial evidence exists to support a conviction is to be determined by an appellate court upon review of the evidence adduced in the light most favorable to the prosecution. *Byrnes v. United States*, 327 F.2d 825 (9th Cir. 1964).

More specifically, defendant Saya contends that his alleged connection with the shooting was based on less than substantial evidence. Having allowed for the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact from the evidence adduced, *State v. Rocker*, 52 Haw. 336, 475 P.2d 684 (1970), and having viewed the evidence in the light most favorable to the government, *Byrnes v. United States, supra*, we find that there was ample evidence to support the jury verdict against defendant Saya. We need not discuss in great detail the testimony upon which his conviction is based. It is undisputed that shots were fired both within and outside of Tommy's Lounge, and it is clear that the firing of the shots was intentional. Ruby Scanlan who was in the bar at the time testified that defendants Saya and Naeole were inside the bar immediately before the outburst of shooting; that both men were armed; and that she saw defendant Saya actually fire his handgun a number of times. She could not recall whether defendant Naeole also did any shooting. Joseph Miha, Theresa Manalo, and Conrad Tomasa were struck by the bullets fired inside the establishment.

Ernest Miranda was also inside the bar when the gunfire started. He had gone there earlier with Walter Kaeo and Joseph Miha. Although he made no identification, he corroborated Scanlan's testimony regarding the presence of two armed men. One of them, he testified, came from the back of the bar holding an object in his left hand. Miranda said that he "saw flame" coming from the object, heard a gunshot, and saw Miha fall off his chair. Hearing other shots being fired by the same gunman, Miranda immediately took flight.

Miranda and Walter Kaeo were shot outside while running from the bar. The latter had been in an argument earlier with defendant Saya. Albert Jensen, an off-duty military policeman who was waiting for his bus directly across the street from Tommy's Lounge, heard the shots from inside the bar, after which he saw two men [Miranda and Kaeo] run out of the bar. Two other men followed. One of them shot first at Kaeo, then at Miranda, and finally at Officer Almadova who, while patrolling his beat, had headed towards the bar to investigate the gunshots. Jensen identified defendant Saya as the gunman who shot at Miranda, Kaeo, and Almadova. Hiroshi Miyashiro, a passerby, was struck by a ricocheting bullet.

Defendant Naeole, for his part, contends that the record is devoid of any evidence showing that the firearm he was charged with carrying had a barrel length of less than twelve inches. We think there is merit to his contention. He had been charged under HRS § 134-9 (1976) which proscribes the carrying of a pistol or revolver without a permit. A "pistol" or "revolver" is defined by HRS § 134-1 (1976) to mean any firearm "with barrel less than twelve inches in length and capable of discharging loaded ammunition or any noxious gas." The gun which he was alleged to have been carrying was never recovered and consequently could not be introduced into evidence. Witnesses, however, described it as a "rifle," a "long gun," a "handgun with long barrel," and a gun which was "not as long as a cowboy pistol." We think the descriptions given to be of insufficient definiteness to sustain the charge under HRS § 134-9. To warrant a conviction under this particular statute, the firearm must have been proven,

 

beyond a reasonable doubt, to have had a barrel length of less than twelve inches.

## II.

The defendants also contend that the trial court should have granted their motions for judgment of acquittal or for a new trial, in view of Ruby Scanlan's repudiation of her trial testimony. Ruby Scanlan was without doubt a crucial witness for the prosecution, particularly insofar as the shooting inside the bar was concerned. She was the only witness who was able to testify that it was defendant Saya who did the shooting inside the bar. But four days after the jury returned verdicts of guilty against the defendants, and before they were sentenced, Ruby Scanlan executed a sworn affidavit stating in pertinent part that at the time of the shooting she was drunk; that she did not see defendant Saya with a gun; that she did not see who did the shooting that evening. Partly on the basis of this affidavit, defendant Saya moved for judgment of acquittal or, in the alternative, for a new trial.

Two days later, however, Ruby Scanlan executed another affidavit repudiating the earlier affidavit. In her second affidavit, she explained why she executed the first:

> That of March 21, 1977, at approximately 6:30 p.m., affiant was approached by ROBIN S. SAYA at Tommy's cocktail lounge at 171 North Hotel Street; that ROBIN S. SAYA threatened your affiant if affiant did not do what he instructed affiant to do; that affiant was told by ROBIN S. SAYA, "If I'm going to be behind bars, you're going!"; that affiant was also told by ROBIN S. SAYA, "My friends are looking for you, but I told them not to touch you until I talk to you"; that your affiant is in fear for her life as affiant feels that ROBIN S. SAYA would have his friends carry out the threat; that ROBIN S. SAYA said to affiant, "Ruby, My life depends on you and your life depends on me"; that your affiant takes these statements made by ROBIN S. SAYA to mean that ROBIN S. SAYA would have affiant killed.

Repudiation of trial testimony may constitute ground for a new trial. *State v. Watie*, 223 Kan. 337, 574 P.2d 1368 (1978). However, such recantation is to be viewed with the utmost suspicion, *United States v. Lewis*, 338 F.2d 137, 139 (6th Cir. 1964), *cert. denied* 380 U.S. 978; *United States v. Troche*, 213 F.2d 401 (2d Cir. 1954), and before a motion for a new trial will be granted on this particular ground the trial court must be satisfied (1) that the testimony given by the recanting witness was false; (2) that without his testimony the jury might have reached a different result; and (3) that either the movant was taken by surprise when the false testimony was given and was unable to meet it or he did not know of its falsity until after the trial. *Larrison v. United States*, 24 F.2d 82, 87-80 (2d Cir. 1928); *United States v. Wallace*, 528 F.2d 863, 866 (4th Cir. 1976). *See also State v. McNulty*, 60 Haw. 259, 588 P.2d 438 (1978), *cert. denied* 441 U.S. 961 (1970) (motion for new trial based on newly discovered evidence).

We have examined the record and are satisfied that defendant Saya's motion for a new trial was properly denied. *United States v. Curry*, 358 F.2d 904 (2d. Cir. 1965); *United States v. Ratley*, 284 F.2d 553 (2d Cir. 1960); *United States v. Bujese*, 371 F.2d 120 (3d Cir. 1967); *Gordon v. United States*, 178 F.2d 896 (6th Cir. 1949), *cert denied* 339 U.S. 935 (1950); *United States v. Atkins*, 545 F.2d 1153 (8th Cir. 1976); *State v. Tyler*, 342 So.2d 574 (La. 1977). Ruby Scanlan was a material witness, and without her testimony the jury might have reached a different result. However, the defendant was unable to convince the trial court that her trial testimony was false. To the contrary, the trial court found "that the witness did testify truthfully at trial." The court refused to give credence to her repudiation of her trial testimony, *Gordon v. United States, supra*, and believed instead her explanation for having executed her recantation affidavit. *United States v. Astore*, 309 F.2d 144 (2d Cir. 1962); *United States v. Troche, supra; Larrison v. United States, supra; Blodgett v. United States*, 161 F.2d 47 (8th Cir. 1947); *Lindsey v. United States*, 368 F.2d 633 (9th Cir. 1966). A motion for a new trial based on repudiation of trial testimony requires the trial court to make certain factual and credibility determinations, *see United*

*States v. Curry, supra; United States v. Atkins, supra,* such as whether the recantation is believable, *State v. Watie, supra,* and its findings will be upheld unless they are wholly without support in the record or in the evidence. *United States v. Johnson,* 327 U.S. 106, 111-12 (1946). The trial court's belief that Ruby Scanlan did testify truthfully at trial is neither clearly erroneous nor wholly unsupported by the evidence.

Moreover, we are unable to see that the defendant was surprised by Ruby Scanlan's testimony at trial. As far as the record shows, her testimony was essentially the same as her testimony before the grand jury, and the transcript of the latter proceedings were made available to the defense. In these circumstances, the defendant can hardly be said to have been surprised by Scanlan's trial testimony. *Cf. Burns v. State,* 574 P.2d 422 (Wyo. 1978).

## III.

Another of the defendants' assignments of error is the trial court's admission of prior extrajudicial identification into evidence. Prosecution witnesses Peter Jensen, Ruby Scanlan, Ramon Galamay, and Winsted Hao testified that they were shown photographic displays, which included photographs of the defendants, and had identified the defendants from these pictorial lineups. Police officers who conducted these lineups also testified to the photographic identification made by these witnesses. Additionally, the officers testified to identification of the defendants made by others, including Theresa Manalo, Conrad Tomasa, and Jimmy Moreno, whom they had interviewed in connection with their investigation but who did not testify at trial.

Jurisdictions are somewhat divided as to the admissibility of evidence of prior photographic identification, *see. generally, Annotation,* 71 A.L.R.2d 449 *et seq.,* but we think the sounder view is to allow for its admissibility. Such pretrial identification is usually conducted as soon after the commission of the offense as possible, and this closer relationship in point of time to the criminal act affords less opportunity for the deterioration or fading of eyewitness impressions and for

changes in the appearance of the alleged perpetrator of the offense. For this reason, it has been found that "the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind." *People v. Gould*, 54 Cal.2d 621, 626, 354 P.2d 865, 867 (1960).

We think there is much to be said for the value and relevancy of prior photographic identifications to the factfinding process, and accordingly hold that where the photographic display was not so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," *State v. Malani*, 59 Haw. 167, 170, 578 P.2d 236, 238 (1978), testimony regarding it may be elicited from the witness who made the identification. *People v. Gould, supra; State v. Jiron*, 27 Utah 2d 21, 492 P.2d 983 (1972). The officer who conducted the photographic lineup may also testify to such identification, *People v. Warren*, 32 Ill. App. 3d 218, 336 N.E.2d 557 (1975), but only where the person making it is present at trial, testifies to the prior identification, and is subject to cross-examination. *People v. Marshall*, 47 Ill. App. 3d 784, 365 N.E.2d 367 (1977); *People v. Warren, supra*.

By these rules, the testimony of Peter Jensen, Ruby Scanlan, Ramon Galamay, and Winsted Hao regarding their pretrial photographic identification of either or both of the defendants was properly admitted into evidence. Police testimony concerning the identification made by these particular witnesses was also properly admitted. The same cannot be said, however, for the testimony of Detective Souza regarding the pretrial photographic identification made by Theresa Manalo and Conrad Tomasa who were not called as witnesses, and for the testimony of Detective Hughes regarding the identification made by Jimmy Moreno who also was not a trial witness. Such testimony was inadmissible. Nonetheless no objection was made to their admission and the issue is now being raised for the first time on appeal.

It is the general rule that evidence to which no objection has been made may properly be considered by the trier of fact and its admission will not constitute ground for reversal. *State*

*v. Pastushin*, 58 Haw. 299, 568 P.2d 504 (1977). It is equally established that an issue raised for the first time on appeal will not be considered by the reviewing court. *State v. Kahalewai*, 56 Haw. 481, 541 P.2d 1020 (1975). Only where the ends of justice require it, and fundamental rights would otherwise be denied, will there be a departure from these principles. *Id.*, H.R.P.P. Rule 52(b) (1977). We find no such justification here. From two groups of photographs, Manalo "identified" defendant Saya from one group and defendant Naeole from the other. Tomasa "identified" the two men as having been in the bar but Tomasa himself was not present when the shooting incident occurred. Moreno picked defendant Saya's photograph from one set and Naeole's from the other. This was the extent of the identification made by Manalo, Tomasa, and Moreno. None of them claimed that the defendants were involved in the shooting, or even that they had been armed. And even if objection had been properly interposed, admission of these particular identifications would at best have been harmless error. H.R.P.P. Rule 52(a) (1977). Even the defendants' own counsel apparently did not consider them to be damaging:

> MR. IKENAGA: Excuse me. If the Court pleases, I did raise an objection as to the fairness of the line-up at one point. For the record, I realize now it was not a well-taken point. For the record, we do not intend to question any of the photographic line-ups. We have questioned witnesses on the photographic line-ups and I mean, — so we can't blow hot and cold. So, if that solves the problem —

Affirmed as to defendant Saya. Reversed as to defendant Naeole.[1]

*David Bettencourt (Brown & Bettencourt*, of counsel) for defendants-appellants.

*Arthur E. Ross*, Deputy Prosecuting Attorney for plaintiff-appellee.

---

[1] We find the defendants' other specifications of error to be without merit.