**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **JONAS B. GABRILLO**, Defendant–Appellant

NO. 16745

(CR. NO. 90–0493)

JULY 27, 1994

BURNS, C.J., HEEN, AND ACOBA, JJ.

OPINION OF THE COURT BY ACOBA, J.

Defendant–Appellant Jonas B. Gabrillo (hereinafter Defendant) was convicted by a jury of Robbery in the Second Degree in violation of Hawai'i Revised Statutes (HRS)

§ 708–841(1)(a) (Supp. 1992).[1]  HRS § 708–841(1)(a) states "[a] person commits the offense of robbery in the second degree if, in the course of committing theft: (a) He uses force against the person of anyone present with the intent to overcome that person's physical resistance or physical power of resistance[.]" The judgment of conviction was filed on December 11, 1992 and Defendant was sentenced to five years' probation with special conditions.

At the trial the following evidence was adduced. This incident occurred on February 6, 1990, in Kalihi, on the island of O'ahu. According to Lini Leslie (hereinafter Lini), the complaining witness, and Lyla Leslie (hereinafter Lyla), his sister, they had walked from the Pay 'N' Save store in the Dillingham Shopping Center to a bus stop on Dillingham Boulevard. The bus stop fronts a Hawai['li Check Cashing establishment and is across the street from a McDonald's restaurant. At the bus stop was a concrete bench with a roof supported by two metal poles. Lyla sat on the west or "'Ewa" side of the bench and Lini sat on the east or "Diamond Head" side of the bench. As he sat looking "'Ewa" for the bus, Lini felt a punch to the right side of his head. The punch caused his head to strike the metal pole making his head hurt and his ears ring. As a result of the force of the punch, Lini dropped the four video

---

[1] Defendant–Appellant Jonas B. Gabrillo was indicted on March 20, 1990 as follows:

On or about the 6th day of February, 1990, in the City and County of Honolulu, State of Hawai['li, Jonas B. Gabrillo, while in the course of committing a theft, did use force against Lini J. Leslie, a person who was present, with intent to overcome that person's physical resistance or physical power of resistance, thereby committing the offense of Robbery in the Second Degree in violation of Section 708–841(1)(a) of the Hawai['li Revised Statutes.

tapes that he was carrying. After yelling obscenities, Defendant picked up one of the video tapes and ran away. With Defendant was a man known to Lini and Lyla as "Scarface."

Lini and Lyla positively identified Defendant as the person who hit Lini and took the tape. After the blow, Lini was able to look at Defendant's face for thirty to forty–five seconds. Lini saw the tattoos on Defendant's forearm. Prior to the offense, Lini had seen him at the Kalakaua gym five to six times a week for a period of one and one–half years. Lini knew him by face and name.

Lyla had also known Defendant prior to the offense. She had seen him three to four times a week at school during the prior year. She saw Defendant punch her brother. From a "couple" of feet away, she could see the tattoos on his forearm and bicep. She had seen the tattoos before that night.

Although it was 6:45 p.m. or 7:00 p.m., both Lini and Lyla could clearly see Defendant because it was dusk and there were streetlights and lighting from the Hawai['']i Check Cashing establishment. Both agreed that he was wearing a black shirt with the sleeves cut off. Lini vaguely remembers Defendant wearing black and yellow shorts. Lyla clearly remembers Defendant wearing long black pants. Defendant displayed the tattoos on his arm to the jury at the request of the State.

Defendant's defense was that his uncle Leo Gabrillo (hereinafter Leo) was the one who punched Lini. Leo refused to testify on the ground that his testimony might incriminate him. At the prosecution's request, Leo showed his arms to the jury.

An investigator with the Department of Prosecuting Attorney for the City and County of Honolulu, called as a

witness for the defense, testified that he had tape recorded a conversation with Leo. Leo told the investigator that he and four other persons, including Defendant, were sitting in a car in the McDonald's restaurant parking lot. Then Leo and "Scarface" got out of the car. As Leo and "Scarface" were walking by the bus stop that fronts the Hawai['']i Federal Credit Union office, Leo punched someone following him who he thought was his "enemy." Leo stated that he did not know who he punched until someone told him three days later that it was Lini. During his conversation with the investigator, Leo first said that he did not remember if the person he punched was carrying anything. Later he said that a video tape had fallen and "Scarface" had told him to go back and get the tape, which he did.

The investigator testified that the bus stop Leo identified was about a block away from the bus stop where Lini and Lyla indicated the incident took place, and that it consisted of concrete benches set back five to seven feet from a telephone pole.

Defendant called two witnesses who testified they were in the car with Leo, "Scarface," and Defendant that night. The witnesses testified that Leo and "Scarface" exited the car and Defendant got into the driver's seat. Defendant then drove around for five to ten minutes before they found Leo and "Scarface." As he entered the car, Leo said that he had punched someone. Their accounts varied as to where the car was parked when Leo and "Scarface" left and where they picked up Leo and "Scarface."

The Defendant contends that his motions for judgment of acquittal should have been granted and that there was "insufficient" evidence to support the verdict.

## I.

The standard on appeal from an order denying a motion for judgment of acquittal is whether there was " 'sufficient evidence to support a prima facie case. The evidence must enable a reasonable mind fairly to conclude guilt beyond a reasonable doubt, giving full play to the right of the factfinder [sic] to determine credibility, weigh the evidence, and draw justifiable inferences of fact.' " *State v. Smith*, 59 Haw 456, 460, 583 P.2d 337, 341 (1978) (quoting *State v. Rocker*, 52 Haw. 336, 345–46, 475 P.2d 684, 690 (1970)). The determination of whether there was sufficient evidence to support a prima facie case requires an evaluation of the evidence as it relates to the elements of the crime charged. *Id.*

There was evidence here which satisfied the essential elements of robbery in the second degree. Lini and Lyla provided direct eyewitness testimony that Defendant used force against Lini's person by punching Lini in the head in the course of taking a video tape from Lini. Defendant's intent to overcome Lini's physical power of resistance may justifiably be inferred from the act of striking Lini.

Clearly, the evidence was sufficient to "support a prima facie case." *Id.* Hence, the trial court did not err in denying the acquittal motions.

## II.

Defendant contends the evidence was "insufficient" to convict him because there was evidence that "someone other than Defendant confessed to the crime" and his

presence at a place other than at the crime scene was "supported by two alibi witnesses." [2]

## A.

We consider the nature of Defendant's defenses first. The Hawai'i Penal Code, HRS Title 37, "establishes two classes of defenses[,]" affirmative defenses and defenses not denominated as affirmative. [3] Commentary on HRS § 701–115 (1985). "A [criminal] defense is a fact or set of facts which negatives penal liability." HRS § 701–115(1) (1985). Affirmative defenses are those "so designated by the [Hawai'i Penal] Code or another statute; or . . . [defenses which] the [Hawai'i Penal] Code or another statute plainly require[] the defendant to prove . . . by

---

[2] An alibi defense "does not dispute the evidence that the crime charged was committed in the manner alleged; rather it merely challenges the identity of the perpetrator." *State v. Pearson*, 234 Kan. 906, 916, 678 P.2d 605, 617 (1985). The same may be said for the "defense" that one other than the defendant committed the crime. *See State v. Cordeira*, 68 Haw. 207, 210, 707 P.2d 373, 376 (1985) ("'alibi' denotes an attempt by the defendant to demonstrate he [or she] 'did not commit the crime because, at the time, he [or she] was in another place so far away, or in a situation preventing his [or her] doing the thing charged against him [or her]'" (quoting **Azbill v. State**, 19 Ariz. 499, 501, 172 P. 658, 659 (1918))).

[3] The Hawai'i Penal Code "govern[s] the construction of and punishment for any offense set forth [in the Penal Code] committed after [January 1, 1973], as well as the construction and application of any defense to a prosecution for such an offense." Hawai'i Revised Statutes (HRS) § 701–102(2) (1985). The Penal "Code [is] the penal law of this State, and thereafter shall govern both the definitions (construction) and punishment of all offenses defined in the Code, and the defenses to those offenses." Commentary on HRS § 701–102 (1985).

a preponderance of the evidence." HRS § 701–115(3) (1985). The defenses raised at trial are not designated "affirmative defenses" under the Hawai'i Penal Code nor is there any statute which requires the defendant to prove such defenses by a preponderance of the evidence. Thus, the defense that someone other than the defendant confessed to the offense is not an affirmative defense. Likewise the alibi defense, *i.e.*, evidence that the defendant was not present at the time of the crime, is not an affirmative defense.[4] If affirmative defenses are not involved and the defendant introduces evidence of a defense, the defendant becomes "entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt."[5] HRS § 701–115(2)(a) (1985). Thus, where the criminal defense is not an affirmative defense, the "defendant need only raise a reasonable doubt as to his guilt." Commentary on HRS § 701–115.

In submitting evidence that another person confessed to the crime and evidence of an alibi, Defendant attempted to "raise a reasonable doubt as to his guilt." *Id.* The burden on the prosecution was to "prove beyond a reasonable doubt facts negativing the defense." *Id.* "The prosecution

---

[4] Although "Rule 12.1 of the Hawai['.]i Rules of Penal Procedure requires the defendant to give notice of an intention to rely upon the defense of alibi, it is not an affirmative defense." *Cordeira*, 68 Haw. at 210, 707 P.2d at 376 (footnote omitted).

[5] The Hawai'i Penal Code "places an initial burden on the defendant to come forward with some credible evidence of facts constituting the defense, unless, of course, those facts are supplied by the prosecution's witnesses." Commentary on HRS § 701–115 (1985).

. . . does this when the jury believes its case and disbelieves the defense." *Id.* Here, the jury returned a verdict of guilty. Accordingly, the verdict represented the jury's determination that Defendant's evidence was not believed, *i.e.*, it did not raise any reasonable doubts of Defendant's guilt and, on the other hand, that the State's witnesses were believed.

Under the Hawai'i Penal Code, the trier of fact considers the fact or facts relevant to reasonable doubt. We hold, therefore, that evidence that another person confessed to the offense or evidence that Defendant was not present at the crime scene, raises issues going to reasonable doubt and, like other issues going to reasonable doubt, is generally a matter for the fact finder to determine.

Thus, on appeal, " 'this court will not attempt to reconcile conflicting evidence,' [or] . . . interfere with a jury decision based on [the] 'credibility of witnesses or the weight of the evidence.' " *State v. Kekaualua*, 50 Haw. 130, 133, 433 P.2d 131, 133 (1967) (Levinson, J. concurring) (quoting *Territory v. Ebarra*, 39 Haw. 488, 492 (1952); *State v. Carvelo*, 45 Haw. 16, 33, 361 P.2d 45, 54 (1961)). *Accord, State v. Bogdanoff*, 59 Haw. 603, 608, 585 P.2d 602, 606 (1978) ("[A]ppellate court will not interfere with a jury's findings as to the credibility of witnesses"); *State v. Cannon*, 56 Haw. 161, 166, 532 P.2d 391, 396 (1975) (Appellate court must determine sufficiency of the evidence " 'without weighing the evidence or determining the credibility of the witnesses' " (quoting *United States v. Kubeck*, 487 F.2d 1256 (6th Cir. 1973))). "The jury's finding of the requisite [elements of the crime charged] is clearly reflected in its verdict." *Kekaualua*, 50 Haw. at 132, 433 P.2d at 133.

Thus, the weight given by the jury to evidence that someone other than Defendant confessed to the crime or that Defendant was at a place other than the crime scene is not ordinarily subject to review on appeal.[6] Such evidence attempts to raise reasonable doubt issues, the resolution of which is ultimately manifested in the jury's verdict.

## B.

Having determined that evidence raising defenses going to reasonable doubt were resolved in the jury's verdict, we turn to the standard applied on appeal of a criminal conviction.

We are required to sustain the conviction " 'so long as there is substantial evidence tending to support the requisite findings for the conviction.' " *State v. Matias*, 74 Haw. 197, 207, 840 P.2d 374, 379 (1992) (quoting *State v. Ildefonso*, 72 Haw. 573, 576–77, 827 P.2d 648, 651 (1992) (quoting *State v. Tamura*, 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981))). Thus, " '[i]t matters not if a conviction . . . might be deemed to be against the weight of the evidence . . . .' " *Id.* Indeed, "on appeal . . . [we do not determine] whether guilt is established beyond a reasonable doubt . . . ." *State v. Cummings*, 49 Haw. 522, 533, 423 P.2d 438, 445 (1967). For, the test on appeal is "whether

---

[6] It has been suggested that deference to the fact finder as the judge of the credibility of witnesses or weight of the evidence should not "preclude this [appellate] court from determining whether, as a matter of law, the evidence is such that reasonable [persons] should have a reasonable doubt as to an essential element of the crime for which the defendant was convicted." *State v. Kekaualua*, 50 Haw. 130, 133–34, 433 P.2d 131, 133 (Levinson, J., concurring).

there is substantial evidence to support the conclusion of the trier of fact." *Id.* "This standard of review is the same whether the case was tried before a judge or jury." *State v. Hernandez*, 61 Haw. 475, 478, 605 P.2d 75, 77 (1980). *Accord State v. Smith*, 59 Haw. 456, 464, 583 P.2d 337, 343 (1978); *State v. Cummings*, 49 Haw. at 533, 423 P.2d at 445. [7]

Necessarily then, our search of the record is for the existence of evidence deemed "substantial"; that is, " 'evidence which a reasonable mind might accept as adequate to support [the] conclusion[]' " of the fact finder. *State v. Lima*, 64 Haw. 470, 475, 643 P.2d 536, 539 (1982) (quoting *State v. Naeole*, 62 Haw. 563, 565, 617 P.2d 820, 823 (1980)). In such a search, the "evidence" must be considered "in its strongest light for the State." *State v. Tamanaha*, 46 Haw. 245, 251, 377 P.2d 688, 692 (1962), *reh'g denied*, 46 Haw. 345, 379 P.2d 592 (1963). If there is substantial evidence which supports the fact finder's conclusion, affirmance is required; conversely, the absence of such substantial evidence requires reversal of the conviction.

We turn then, to a determination of whether there was substantial evidence to support the jury's guilty verdict.

---

[7] Thus in a jury waived trial the trial judge's determination "on the ultimate finding of guilt ... must stand if it is supported by substantial evidence." 2 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: *Criminal 2d* § 374 at 315 (1982). But, "on issues other than the ultimate issue of guilt, there is generally agreement that the 'clearly erroneous' test should be applied and that it has the same meaning in criminal cases as it has in civil cases." *Id.* at 315–16 (footnotes omitted). *Accord State v. Sujohn*, 5 Haw. App. 459, 697 P.2d 1143 (1985). As the issue before this court is the ultimate issue of guilt, the standard on appeal is whether there was substantial evidence to support the conclusion of the trier of fact regardless of whether there was a trial by judge or jury.

As discussed in Part I, *supra*, Lini and Lyla provided direct eyewitness testimony that Defendant used force against Lini's person by punching Lini in the head in the course of taking a video tape from Lini. In addition to those facts, Lini identified Defendant as his assailant based on the witness' acquaintance with Defendant over a period of one and a half years, the tatoos on Defendant's arm, and his black shirt with cut–off sleeves. Similarly, Lyla, who was present at the time of the incident, identified Defendant based on having seen Defendant at her school during the prior year, the tattoos on Defendant's arm, his black shirt with cut–off sleeves and his long black pants. Thus, we find in the record, " 'evidence which a reasonable mind might accept as adequate' " to support the jury's guilty verdict. *Lima*, 64 Haw. at 475, 643 P.2d at 536 (1982) (quoting *State v. Naeole*, 62 Haw. 563, 565, 617 P.2d 820, 823 (1980)).

### III.

The trial court having properly denied the acquittal motions and there being substantial evidence to support the verdict, the December 11, 1992 judgment is affirmed.

*Alexa D. M. Fujise*, Deputy Prosecuting Attorney, on the brief for plaintiff–appellee.

*Richard T. Pafundi*, on the brief for defendant–appellant.