**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000872
18-DEC-2020
07:53 AM
Dkt. 55 SO**

NO. CAAP-17-0000872

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
K.S. KINNY, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1PC151000086)

SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Leonard and Wadsworth, JJ.)

Defendant-Appellant K.S. Kinny (**Kinny**) appeals from the
Judgment of Conviction and Probation Sentence (**Judgment**), entered
on October 19, 2017, in the Circuit Court of the First Circuit
(**Circuit Court**).[1]  Following a bench trial, Kinny was convicted
of Assault in the Second Degree (**Assault 2**), in violation of
Hawaii Revised Statutes (**HRS**) § 707-711(1)(d) (2014).[2]

On appeal, Kinny contends: (1) there was insufficient
evidence to support his conviction; and (2) the State failed to
prove beyond a reasonable doubt facts negating Kinny's claim of

---

[1]    The Honorable James H. Ashford presided.

[2]    HRS §§ 707-712(1)(d) provides:

    (1) A person commits the offense of assault in the
second degree if:

    . . . .

    (d)    The person intentionally or knowingly causes
           bodily injury to another with a dangerous
           instrument[.]

self-defense.[3]/

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we affirm the Judgment for the reasons set forth below.

## I.  Background

At trial, the complaining witness, Masterino Machuo (**Machuo**) testified as follows.  On January 18, 2015, at around 8:00 p.m., Machuo was in the parking lot of Kalihi Market, waiting for his daughter to finish work at the nearby Sunny's Mart.  Machuo was standing outside of his car, which was parked by the dumpsters, with three friends.  He and his friends were "talking stor[y]" and were not drinking alcohol.

When Machuo first saw Kinny that night, Kinny "was drinking alcohol . . . he was holding a bottle, you know, the 40."  Asked whether he knew Kinny, Machuo testified, "it was a casual -- I mean, I usually see him around, but not very much I know."  Kinny began walking toward where Machuo and his friends were standing.  When Kinny got within 8-10 feet of Machuo, Kinny called out to Machuo by name.  Machuo told Kinny to leave because "we know he was under the influence."  Kinny "walk[ed] away a little further" and then looked back and stared at Machuo as Machuo entered his car.

Machuo and his friends got into Machuo's car, and Machuo drove toward the parking lot exit.  Machuo stopped the car to wait for traffic before going out onto the road.  While Machuo was waiting, Kinny came up to Machuo's driver's side window, pulled up his shirt, took out a knife, and stabbed at Machuo several times through the open window.  Machuo tried to move away and to defend himself from the downward thrust of the knife blade by flailing his arms in front of him.  Machuo's right-hand middle finger was cut by the blade.  Kinny then "ran up the sidewalk," and Machuo drove to Sunny's Mart to park and pick up his

---

[3]/     Kinny's points of error have been reordered and restated for clarity.

daughter. "When the police came on the scene," Kinny and his son ran toward Kuhio Park Terrace (**KPT**). After the incident, Machuo met with police and was taken to Queen's Medical Center where his hand was treated.

Kinny also testified, as follows. On January 18, 2015, Kinny was drinking beer on the steps next to Sunny's Mart from 11:00 a.m. until 8:00 p.m. He had "got[ten] two of the big beer can[s] and . . . was just sipping on them throughout the day." Eventually, Kinny's son came looking for him and they went down to Jin's Market to buy phone minutes. At Jin's Market,[4] Kinny saw Machuo beside his car in the parking lot. Asked whether he knew Machuo, Kinny testified, "I just heard about him[,]" and explained that Machuo and Kinny's father were "drinking companion[s]." Kinny also saw "other Micronesian men at Jin's Market[,] . . . next to the store." Kinny shook their hands.

According to Kinny, when he looked at Machuo, "[Machuo] was mad. [Machuo] told [Kinny] not to look at [him] or he's going to beat [Kinny] up. And [Kinny] just apologized to him." Machuo called his companions to come with him, and four of them got into the car with Machuo and his wife.[5] "They started to drive to the end of the store and they stop[ped,] . . . [a]nd then they . . . continue[d] to be mad at [Kinny] for looking at [Machuo]." Kinny testified that "[Machuo] asked his wife to give him his knife and so he can use it to hurt [Kinny.]" Machuo came out of the car with the knife and walked toward Machuo and his son. Kinny testified: "I took out my knife from my pocket, and then I was blocking it when [Machuo] was trying to cut me with the knife. And then his friend Leo came out from the back of the car and separated us." Kinny and his son then walked toward KPT.

Honolulu Police Department (**HPD**) Officer Gregory Perez (**Officer Perez**) testified at trial as follows. He arrived at Sunny's Mart after 8:00 p.m. on the evening of the incident, where he observed Machuo bleeding from one of his hands. Officer

---

[4]     It appears that Jin's Market was also known as Kalihi Market.

[5]     Machuo and his wife both testified she was not present at the parking lot that evening.

3

Perez noted that Machuo was "[k]inda calm, but surprised" and that "there was no indication at the time that [Machuo] was drinking." After speaking with Machuo, Officer Perez called in a description of Kinny. After Kinny was located (see infra), Officer Perez took Machuo to KPT for a field showup to identify Kinny. Machuo was then taken back to Sunny's Mart, where "the ambulance people took care of [him.]"

HPD Officer Joel Dadoy **(Officer Dadoy)** also testified, as follows. After receiving the description of Kinny, Officer Dadoy located Kinny and his son and followed them in his HPD vehicle toward a building in KPT. Officer Dadoy then parked his vehicle and began to follow Kinny and his son on-foot as they entered the building "through the back side of the lobby area." Officer Dadoy observed them discard a black object into a trash can. After discarding the object, Kinny and his son turned back and headed toward Officer Dadoy, as other officers responded to the front of the lobby area. Officer Dadoy unholstered his firearm and instructed Kinny and his son to get on the ground; both complied. Officer Dadoy testified that the discarded black object was found in the trash can, and it was a knife. HPD Officer Brandon Kaholokula, who also responded to the KPT lobby that evening, testified that he recovered a knife with a black handle from Kinny's son's hip pocket during a weapon frisk.[6]

---

[6] After closing arguments, the Circuit Court noted:

Dadoy and Kaholokula were inconsistent regarding where the knife was found. . . . Dadoy initially testified that he got the – or the knife was gotten -- taken from the trash can, but then he testified that he himself did not retrieve the knife. So there -- from that alone, it's clear that he was -- he had assumed that the knife was retrieved from the trash can. He testified, I'm confident, not on personal knowledge, but based upon an assumption which was basically refuted by both Kaholokula and the defendant in that Kaholokula said he frisked the son, found the knife in the hip pocket, and the defendant agreed that the knife[,] which is Exhibit 9, I believe, is indeed his knife. So I am aware of what I think Dadoy was -- is incorrect testimony based on lack of personal knowledge, but I candidly don't think that that particular detail is particularly material to this.

## II. Discussion

Kinny contends there was insufficient evidence to support his conviction for Assault 2. Specifically, he argues "[t]here was insufficient evidence to show that Kinny intended to assault Machuo[,]" because "Kinny maintained that it was Machuo who was handed a knife who then came at Kinny." Kinny similarly argues that the State failed to prove beyond a reasonable doubt that Kinny did not act in self-defense, where Kinny testified that "Machuo pulled a knife on him," "[f]rom Kinny's perspective the threat was real that he faced imminent bodily injury[,]" and thus the State failed to prove that Kinny did not have the requisite belief that deadly force was necessary.

Sufficient evidence to support a conviction requires substantial evidence as to every material element of the offense charged. State v. Grace, 107 Hawaiʻi 133, 139, 111 P.3d 28, 34 (App. 2005) (quoting State v. Ferrer, 95 Hawaiʻi 409, 422, 23 P.3d 744, 757 (App. 2001)). Substantial evidence is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. The evidence must be "viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact[,]" who must "determine credibility, weigh the evidence, and draw justifiable inferences of fact." Id.

To establish that Kinny committed Assault 2, the State was required to prove beyond a reasonable doubt that Kinny intentionally or knowingly caused bodily injury to Machuo with a dangerous instrument. See HRS §§ 707-711(d). "'Bodily injury' means physical pain, illness, or any impairment of physical condition." HRS § 707-700 (2014). "Dangerous instrument" means, among other things, any "weapon, device, [or] instrument, . . . which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury." Id.

Here, based on the trial testimony of Machuo and Kinny, and the knife admitted into evidence, the Circuit Court found that Kinny had a knife and wielded the knife during the altercation with Machuo. The court further found, based on the

5

photographic evidence, Machuo's testimony, and "common sense," that Machuo's middle finger was cut by Kinny's knife during the altercation, which caused the finger to bleed.  The court concluded that Kinny caused bodily injury to Machuo by inflicting this wound, and that the knife was a deadly weapon "in the manner that it was used and its capacity to inflict deadly harm."  The court further found that Kinny "acted intentionally in all aspects of what he's charged with."  The Circuit Court thus ruled that the State had proved beyond a reasonable doubt that Kinny intended to and did cause bodily injury to Machuo with a dangerous instrument.

As to Kinny's claim of self-defense, the Circuit Court concluded:

> [T]o cut to the chase, when I consider the defendant's intoxication, when I consider inconsistencies in a variety of testimony, when I consider the relative height and arm's reach of the two combatants, when I consider the length of the alleged respective blades, one of which is in evidence, the other one which was described, in practical effect, to be a 12-inch blade with a handle, I candidly find that it was inconceivable that the complaining witness would be cut on the hand in this knife scrimmage without any injury whatsoever to the defendant[,] that defies common sense, particularly given the circumstances of the case, including the defendant's intoxication.  So for those reasons as well as other reasons, I do find defendant's version of events to be incredible.  I reject it.  I reject the self-defense argument.

Upon review of the record, we conclude there was substantial evidence, including Machuo's testimony and the physical evidence, that Kinny cut Machuo with a dangerous instrument, causing him bodily injury.  We further conclude that based on Kinny's acts and the inferences fairly drawn from all of the circumstances, the Circuit Court could reasonably have inferred that Kinny intended his conduct to cause bodily injury to Machuo.  See State v. Stocker, 90 Hawaiʻi 85, 92, 976 P.2d 399, 406 (1999) (quoting State v Mitsuda, 86 Hawaiʻi 37, 44, 947 P.2d 349, 356 (1997)).

Although Kinny claims that Machuo was the first aggressor and came at him with a knife, "[t]he prosecution disproves a justification defense beyond a reasonable doubt when the trial court believes the prosecution's case and disbelieves the defendant's case."  State v. Jhun, 83 Hawaiʻi 472, 483, 927

P.2d 1355, 1366 (1996) (citing <u>State v. Gabrillo</u>, 10 Haw. App. 448, 456-57, 877 P.2d 891, 895 (1994)).  Here, the Circuit Court found Kinny's version of events to be incredible based on the several evidentiary considerations it identified.  We decline to pass upon issues regarding the credibility of witnesses and the weight of the evidence, which are within the province of the trier of fact – here, the Circuit Court.  See <u>Stocker</u>, 90 Hawaiʻi at 90, 976 P.2d at 404 (quoting <u>State v. Lee</u>, 90 Hawaiʻi 130, 134, 976 P.2d 444, 448 (App. 1999)).  We thus conclude there was sufficient evidence to negate Kinny's claim of self-defense.

Accordingly, on this record, the evidence was sufficient to support Kinny's conviction for Assault 2.

### III.  Conclusion

For these reasons, we affirm the Judgment of Conviction and Probation Sentence, entered on October 19, 2017, in the Circuit Court of the First Circuit.

DATED:  Honolulu, Hawaiʻi, December 18, 2020.


On the briefs:

Richard D. Gronna
for Defendant-Appellant.

Sonja P. McCullen,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge