**DEBORAH L. RICHARDS**, Plaintiff–Appellee, v.
**KAILUA AUTO MACHINE SERVICE**, Defendant–
Appellant

NO. 15957

(CIV. NO.: P91–0002 of 6/13/92)

SEPTEMBER 19, 1994

HEEN, WATANABE, AND ACOBA, JJ.

614

## OPINION OF THE COURT BY ACOBA, J.

On January 2, 1991, the Plaintiff Deborah L. Richards (hereafter Plaintiff) filed a complaint against Defendant Kailua Auto Machine Service (hereafter Defendant) for damages to her 1984 Pontiac Fiero automobile (hereafter vehicle) allegedly caused by Defendant's negligent repair of her vehicle in January 1990. Plaintiff's complaint also claimed breach of contract and of warranties based upon the same allegations.

Defendant entered a "general denial" on January 17, 1991.

Trial before the district court began on April 25, 1991. At trial, the following evidence was adduced, and Plaintiff's Exhibits 4, 5, 6, 7 and 8 were received in evidence. On January 25, 1990, the vehicle stalled. This occurred after Defendant's work on Plaintiff's vehicle. Mileage on the vehicle was 56,000 miles. It was towed at a cost of $31.20 (Plaintiff's Exhibit 4) to Mike Salta Pontiac (hereafter MSP). A mechanic at MSP indicated that a metal nut had passed through the carburetor into the vehicle's number three cylinder. The cost of the mechanic's examination was $170.83 (Plaintiff's Exhibit 5). Plaintiff removed the nut from the engine.[1] She purchased a General Motors engine which was supposed to be "compatible" with her vehicle at a cost of $624.00 (Plaintiff's Exhibit 6). When her friends were unable to install the engine for her, Plaintiff had the vehicle towed to MSP. The cost of towing the vehicle back to MSP and for its inspection was $153.64 (Plaintiff's Exhibit 7). Apparently, MSP's quoted cost to

---

[1] There is no indication in the record of what happened to the damaged engine.

install the new engine was not satisfactory and the Plaintiff took the vehicle to Bob Sato's Auto Repair Shop (hereafter BSARS). It was in the shop "for approximately three weeks." The cost of BSARS's repair work was $671.30 (Plaintiff's Exhibit 8). Of the $671.30, $69.70 was attributable to a battery, $128.46 was attributable to a catalytic convertor, and $12.01 was attributable to a rear brake spring.

Plaintiff obtained the car from BSARS in July 1990. Plaintiff testified that even with the repairs, the vehicle "did not run smoothly[,] . . . [took] a full minute [to warm up,] . . . and had a problem with . . . overheating." In January 1991, she traded it in for another automobile and "received a thousand dollars" on the trade–in.

Plaintiff claimed loss of the vehicle's use for seven months. She used a taxicab "at a minimum of twice a week" and the bus. The taxi fare was "approximately $5 each way" for "20–22 weeks."

James M. Campbell, a consulting engineer, was Plaintiff's expert witness. He examined the parts involved and testified that the nut caused the engine's cylinder wall to crack. The expert testified that the engine could be repaired. He stated that "it depends on whether the owner . . . would accept the types of repair that's [sic] possible. It's possible to repair it if you want to spend the money to do it."

Plaintiff offered Plaintiff's Exhibit 11 into evidence, papers from the "blue book," "to show the loss of value . . . to establish some link between the blue book value and the trade–in value . . . ." However, an objection to this exhibit was sustained. No cross–appeal was filed by Plaintiff on this ruling.

Bob Crivello, Defendant's owner who worked on the vehicle, testified that his work did not result in the nut entering the cylinder. On January 14, 1990, Defendant billed Plaintiff $60 for the tune–up, troubleshooting, and rear brake work and $60 for a "previous bill," for a total of $120.

In her post–trial memorandum filed August 22, 1991, Plaintiff requested a judgment "in Plaintiff's favor against Defendant in the amount of $11,310.00." Plaintiff claimed that $9,400 was for the difference in the purchase price of the vehicle ($10,400) and the resale price of the vehicle after it was damaged ($1,000). "Out–of–pocket expenses" totaled $1,710.97. Plaintiff asserted that this amount was "supported by exhibits introduced at trial," but never specified which exhibits provided such support, nor indicated how the sum of $1,710.97 was calculated. Lastly, Plaintiff claimed $220 for taxi fees incurred as a result of the loss of the vehicle's use.

The district court entered its judgment on January 30, 1992 for $5,000 on the "amount claimed by Plaintiff" only. Findings of fact and conclusions of law were not filed by the court. Interest and costs were not awarded.

## I.

On appeal, Defendant does not contest its liability. Its sole contention is that there is "no evidence in this case to support a damage award in excess of $1,840.80." The $1,840.80 sum consists of the amounts represented by Plaintiff's Exhibits 4, 5, 6, and 7, $461.13 based on Plaintiff's Exhibit 8, and an allowance of "$400 for taxi charges at $20.00 per week for . . . twenty weeks." The $671.30 reflected on Plaintiff's Exhibit 8 was reduced by "$210.17 . . . for parts unrelated to engine damage," thus leaving the balance of $461.13 agreed to by the Defendant.

Defendant conceded the expenditure for taxi fees was $400. Moreover, Plaintiff's testimony at trial was that she took the taxi "twice a week to and from work. That was approximately five dollars each way. . . . For seven months. 20 to 22 weeks." Based on this testimony, Plaintiff's expenditure would actually amount to between $400 and $440 rather than the $220 claimed by Plaintiff's counsel. As Defendant concedes to $400 and this amount is greater than the amount Plaintiff requested in her post–trial memorandum, $400 is acceptable for taxi costs.

But aside from conceding damages in the amount of $1,840.80, Defendant specifically argues that "the record is devoid of any evidence of loss of value" of the vehicle.

Plaintiff's only response on appeal is that Defendant failed to include all of the evidence below in the record on appeal because the "transcript of [Plaintiff's] testimony on the first day of trial was incomplete[,]" specifically that the testimony of Plaintiff that "she purchased her car for $10,400" was not recorded. Plaintiff relies on the statement in *Union Bldg. Materials Corp. v. The Kakaako Corp.*, 5 Haw. App. 146, 151–52, 682 P.2d 82, 87, *reconsideration granted*, 5 Haw. App. 683, 753 P.2d 253 (1984), that the defendant having failed to "include in the record all of the evidence on which the lower court might have based its findings[,] . . . the lower court must be affirmed." However, the lower court here did not make any "findings."

In any event, in its reply brief, Defendant, relying on *City & County v. Toyama*, 61 Haw. 156, 158 n.1, 598 P.2d 168, 170–171 n.1 (1979), maintains that "a party must either . . . [provide] . . . an adequate record, or concede the disputed point in its briefs or at oral argument." Conse-

quently, it concedes that "[e]vidence at trial showed that [Plaintiff] purchased her car in 1984 for $10,400.00." Defendant having conceded that there was evidence Plaintiff purchased her vehicle in 1984 for $10,400, any alleged insufficiency in the record is a moot point because "the briefs of the parties treat [this] fact[] as true[.]" *Id.* Although Plaintiff laments the lack of findings and Defendant claimed the record was incomplete, neither party moved to have the case remanded to the district court for the entry of findings of fact and conclusions of law.

Rule 52(a) of the District Court Rules of Civil Procedure (DCRCP) is pertinent. It provides that "[u]nless findings are requested, the court shall not be required to make findings of fact and conclusions of law." DCRCP Rule 52(a). The district court was not required to make findings of fact and conclusions of law because neither party requested findings.

However, "[w]henever a notice of appeal is filed and findings of fact and conclusions of law have not been made, unless such findings and conclusions are unnecessary as provided by subdivision (a) of this rule, the court shall find the facts specially and state separately its conclusions of law thereon." DCRCP Rule 52(c). Under DCRCP Rule 52(a), findings and conclusions are unnecessary when "an opinion or memorandum of decision is filed" or when "decisions of motions except as provided in Rule 41(b)" are involved. DCRCP Rule 52(a).

Here, a motion was not involved and an opinion or memorandum of decision was not filed. Thus, findings and conclusions are seemingly necessary.

On their faces DCRCP Rules 52(a) and (c) are similar to Hawaii Rules of Civil Procedure (HRCP)

Rule 52(a)[2] and manifestly, the purposes of findings of fact under the DCRCP and HRCP are the same:

> One purpose of requiring findings of fact is to aid the appellate court by affording it a clear understanding of the ground or basis of the decision of the trial court. Another purpose is to make definite just what is decided by the case in order to apply the doctrines of estoppel and res judicata in future cases. Finally, and possibly most important, the requirement that findings of fact be made is intended to evoke care on the part of the trial judge in ascertaining the facts.

---

[2] District Court Rules of Civil Procedure Rule 52 states in pertinent part:

**Rule 52. FINDINGS BY THE COURT.**

. . . Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. If an opinion or memorandum of decision is filed, stating the facts and the court's opinion on the law, it will be unnecessary to make other findings of fact and conclusions of law. . . .

\* \* \*

. . . Whenever a notice of appeal is filed and findings of fact and conclusions of law have not been made, . . . the court shall find the facts specially and state separately its conclusions of law thereon.

Hawai'i Rules of Civil Procedure Rule 52(a) states in pertinent part:

In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon . . . . Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. . . . If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

9 C. Wright & A. Miller, Federal Practice and Procedure: *Civil* § 2571 at 679–80 (1971) (footnotes omitted). Hence, those decisions construing HRCP Rule 52(a) are an aid to construing DCRCP Rules 52(a) and (c). While HRCP Rule 52(a) should be strictly followed, findings of fact by the circuit court are not jurisdictional and the appellate court may proceed where the record is clear and findings are unnecessary.

> "The duty of the trial court to make findings of fact should be strictly followed. But such findings are not a jurisdictional requirement of appeal which this court may not waive. Their purpose is to aid appellate courts in reviewing the decision below. In cases where the record is so clear that the court does not need the aid of findings it may waive such a defect on the ground that the error is not substantial in the particular case."

*Lalakea v. Baker*, 43 Haw. 321, 329 (1959) (quoting *Hurwitz v. Hurwitz*, 136 F.2d 796, 799 (D.C. Cir. 1943)). It follows, then, that the appellate court may also waive the district court findings required under DCRCP Rules 52(a) and (c) where the record is clear and such findings are unnecessary to a determination of the issues on appeal.

In its brief, Defendant concedes the award of damages to Plaintiff in the amount of $1,840.80. Plaintiff, on the other hand, did not cross–appeal on any damages issue. Her answering brief did not respond at all to Defendant's calculation of damages or its contention that the "record is devoid of any loss of value" of the vehicle. Hence, the sole issue on appeal is whether there was evidence establishing the vehicle's loss in value caused by the faulty repair, from which the district court could have based its award of

damages in excess of $1,840.80. We find the record is clear enough without the necessity of findings for purposes of deciding this sole issue.

## II.

"The general rule in measuring damages is 'to give a sum of money to the person wronged which as nearly as possible, will restore him [or her] to the position he [or she] would be in if the wrong had not been committed.'" *Rodrigues v. State*, 52 Haw. 156, 167, 472 P.2d 509, 517 (1970) (quoting C. McCORMICK, HANDBOOK ON THE LAW OF DAMAGES § 137 at 561 (1935)). *Accord Nobriga v. Raybestos–Manhattan, Inc.*, 67 Haw. 157, 162, 683 P.2d 389, 393 (1984) (quoting *Rodrigues*); *Greene v. Texeira*, 54 Haw. 231, 241, 505 P.2d 1169, 1175–76 (1973) (Levinson, J. dissenting) (citing *Rodrigues*).

In this respect, when personal property is damaged rather than destroyed, the traditional starting point in measuring damages is "the depreciation rule, which gives the [injured party] the difference between the value of the chattel immediately before damage and the value immediately after, that is, the depreciation in value caused by the damage." D. DOBBS, HANDBOOK ON THE LAW OF REMEDIES, § 5.10 at 379 (1973). *See also* Annotation, *Measure and Elements of Damages in Action Against Garageman Based on Failure to Properly Perform Repair or Service on Motor Vehicle*, 1 A.L.R. 4th § 4 (1980). This measure of damages is "the one most often approved by the courts" where an automobile is readily susceptible to repair. C. McCORMICK, *supra*, § 124 at 472 (1935). Courts which "follow[] the depreciation measure of damages generally recognize that cost of repair is evidence of the depreciation, though not in itself a measure of damages." D. DOBBS, *supra*, § 5.10 at

379. See C. McCormick, *supra*, § 124 at 472. This measure was also apparently relied on by Plaintiff at trial.

Courts have applied various measures of damages to personal property. D. Dobbs, *supra*, § 5.10 at 379; C. McCormick, *supra*, § 124 at 471–72; *Measure and Elements of Damage*, *supra*, § 2. But "[a]ll [of] the [different] measures [for damages to personal property] are merely 'guides to common sense,' and the question in each case is ultimately a question of fully compensating the [injured party]. Thus, the various measures should be adjusted as required to meet the goal of compensation." D. Dobbs, *supra*, § 5.10 at 379 (footnote omitted). It follows then that "no mechanical rule can be applied with exactitude in [the] assessment of property damage . . . [and] [e]ach case must rest on its own facts and circumstances as supported by the proof in the record." ***Williams v. Louisiana Machinery Co.***, 387 So.2d 8, 13 (La. Ct. App. 1980).

We are not required to apply any specific measure of damages under the circumstances of this case. Defendant does not contest the award of corrective repair costs (Plaintiff's Exhibit 8). Additionally, Defendant's only argument with respect to Plaintiff's claim of the vehicle's depreciated value after the corrective repair work is that there was a lack of evidence to support such a claim. Because we agree that the evidence was insufficient to establish that claim, we do not, as a general matter, express an opinion one way or the other as to what effect, if any, recovery of repair costs should have on a claim for a vehicle's loss in value.[3] As we indicated above, in

---

[3] Some courts have found that "[d]amages for tortious property damage to an automobile include costs of [corrective] repair and the difference in value of the automobile before the accident and after the

determining the appropriate measure of damages for injury to personal property, each case must be determined on its own facts, the objective being to fully compensate the injured party.

While it is conceded that Plaintiff purchased her vehicle for $10,400 in 1984, this was not evidence of its value immediately before Defendant's work in January 1990. Additionally, the $1,000 Plaintiff received in January 1991 on a "trade–in" of her vehicle did not establish the value immediately after the alleged defective work was completed in January 1990, there being no evidence the "trade–in" amount in 1991 had any relation to the value of the vehicle after the work.

Consequently, the evidence was insufficient to establish the depreciated value of the vehicle caused by Defendant's defective work. Therefore, the evidence did not support the award of $5,000 on "the amount claimed by Plaintiff" beyond the sum of $1,840.80.

### III.

While no award for post judgment interest was made, interest from the date judgment was entered in the district court should be granted.

Hawai'i Revised Statutes (HRS) § 478–3 (Supp. 1992) provides that, "[i]nterest at the rate of ten per cent a year, and no more, shall be allowed on any judgment recovered before any court in the State, in any civil suit." In this

---

repairs are completed," *Camaraza v. Bellavia Buick Corp.*, 216 N.J. Super. 263, 266, 523 A.2d 669, 671 (1987), "so long as the sum does not exceed the decline in market value [immediately after injury], and does not exceed the pre–accident [or pre–injury] market value of the vehicle." *Fanfarillo v. East End Motor Co.*, 172 N.J. Super. 309, 313, 411 A.2d 1167, 1169 (1980) (citations omitted).

particular case, interest should run from the date of the original judgment.

The Hawai'i Rules of Appellate Procedure Rule 37 provides that:

> [I]f a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date the judgment was entered in the circuit or district court. If the judgment is modified or reversed with a direction that a judgment for money be entered in the circuit or district court, the notice of entry of judgment shall contain instructions with respect to allowance of interest.

When a judgment is modified or reversed, the notice of entry of judgment on appeal "should specify whether interest is to run from the date of entry of the appellate judgment or from the date on which the judgment would have been entered in the [lower] court but for the erroneous ruling corrected on the appeal." 16 C. WRIGHT, A. MILLER, E. COOPEr & E. GRESSMAN, FEDERAL PRACTICE AND PROCEDURE: *Civil* § 3984 at 463 (1977). When the judgment is affirmed in part, the portion of the judgment that is affirmed accrues interest from the date the judgment was originally entered in the court below. ***Masinter v. Tenneco Oil Co.***, 929 F.2d 191, 195 (5th Cir. 1991). [4] Fair-

---

[4] ***Masinter v. Tenneco Oil Co.***, 929 F.2d 191 (5th Cir. 1991), interpreted Federal Rules of Appellate Procedure (Fed. R. App. P.) 37 which is substantially the same as Hawai'i Rules of Appellate Procedure Rule 37. Fed. R. App. P. 37 provides that:

> Unless otherwise provided by law, if a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall

ness dictates this result because "[c]alculating interest from the date of the second judgment would penalize appellees for the trial judge's error." *Cordero v. De Jesus-Mendez*, 922 F.2d 11, 18 (1st Cir. 1990). Thus, in this case interest would run from January 30, 1992, the date that the judgment was entered below.

## IV.

Furthermore, as the prevailing party, Plaintiff would ordinarily be entitled to reimbursement for her costs. DCRCP Rule 54(d) provides that, "costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" Also, HRS § 607-9 (Supp. 1992) provides, in part, that "[a]ll actual disbursements . . . sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs."

Plaintiff requested recovery of costs in her complaint, but the record does not reflect a request for recovery of costs after judgment was entered. However, we believe that under the circumstances, an award of costs should be considered by the district court.

## V.

Accordingly, the judgment entered by the district court on January 30, 1992 is affirmed with respect to the award of $1,840.80 to Plaintiff, and vacated as to the remainder of the judgment amount. Also, the case is remanded with instructions to enter an order granting

---

be payable from the date the judgment was entered in the district court. If a judgment is modified or reversed with a direction that a judgment for money be entered in the district court, the mandate shall contain instructions with a respect to allowance of interest.

post judgment interest on $1,840.80 from January 30, 1992 until the judgment is paid, and for an award of costs to Plaintiff as may be determined appropriate by the district court.

*Melvin Y. Agena* (*Emlyn H. Higa* with him on the brief) for plaintiff–appellee.

*Howard J. Gravelle*, on the brief for defendant–appellant.