933 P.2d 90

STATE of Hawai'i, Plaintiff–Appellee,

v.

Nelson TOMAS, Defendant–Appellant.

No. 17312.

Intermediate Court of Appeals of Hawai'i.

Feb. 14, 1997.

As Amended March 7, 1997.

254

Todd A. Watanabe, Deputy Public Defender, on the brief, Honolulu, for defendant-appellant.

Marie Kosegarten, Deputy Prosecuting Attorney, County of Maui, on the brief, Wailuku, for plaintiff-appellee.

Before WATANABE, ACOBA and KIRIMITSU, JJ.

ACOBA, Judge.

We hold in this appeal by Defendant–Appellant Nelson Tomas (Defendant) from a Hawai'i Revised Statutes (HRS) § 709–906(1) (1993) [1] conviction for abuse of his wife, Judith Tomas (Judith), a family and household member, that (1) a prior inconsistent statement is admissible as substantive evidence of the facts asserted therein and is sufficient to establish physical abuse and the manner in which it was inflicted without additional independent corroborative evidence and (2) such a statement may itself be sufficient on appeal to support a criminal conviction if it satisfies the substantial evidence standard applied in criminal cases.

I.

The following facts were adduced at trial. On direct examination, Judith testified that she and Defendant had been married for "[f]ive and a half years." On the night of May 25, 1993, Judith came home, saw that "the house and the kitchen [were] a mess" and became "very upset," "angry," and "frustrated." According to Judith, she "started talking" and "probably screaming too [sic] at the same time." Defendant, who had been sleeping in the bedroom, awoke, and he and Judith started arguing. Judith related that Defendant "just pushed" her shoulder with "his hands" and told her to "stop screaming[.]" After he pushed her, Defendant left for work. When asked how her shoulder felt after the incident, Judith replied that she felt

1. Hawai'i Revised Statutes (HRS) § 709–906(1) (1993) provides:

§ 709–906 **Abuse of family and household members; penalty.** (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member....

For the purposes of this section, "family or household member" means spouses or former spouses, parents, children, and persons jointly residing or formerly residing in the same dwelling unit.

"[n]othing."[2] Judith was "very angry and very upset" so she called the police. She was also "confused." Judith filled out a form provided by the police. Judith explained to the police that she became "very upset" when she arrived home "tired" from work and saw the "mess" at home.

Judith acknowledged she recognized the form identified as State's Exhibit 1 as the one she filled out for the police. She identified her signature at the top and the bottom of the form and verified the replies on the form as having been written by her. When asked why she wrote, "Slapped twice on shoulder, kicked on right butt with pain even after[,]" Judith replied, "Just because I was angry." She reiterated this reason when the prosecutor questioned her about another response which stated, " 'Right shoulder and right butt hurts[.]' " At trial, Judith recalled writing the response on the form but stated that she "wasn't [her]self" at the time and had "made it up."

On cross-examination by defense counsel, Judith confirmed that her responses on the form were motivated by her anger.[3]

2. Judith Tomas (Judith) gave the following testimony at trial:

> A. [JUDITH] And [Defendant]—I believe [Defendant] just pushed me.
> Q. [PROSECUTOR] Okay. When you say he pushed you, can you tell us what do you mean by that?
> A. He just—he—he pushed me and tell me to stop screaming, I guess.
> Q. Okay. When you say he pushed you, what did he use to push you, what—did anything touch you?
> A. Just his hands. He just pushed me.
> Q. Okay. And where did his hands touch you at?
> A. Maybe on my shoulder.
> . . . .
> Q. What happened after that?
> A. That's it. He left. He left for work.
> Q. Okay. How did your shoulder feel after that?
> A. Nothing.
> Q. Okay. What did you do after your husband left?
> A. I was very angry so I called the police—very angry and very upset, and I was confused too at the same time.

3. Judith testified on cross-examination as follows:

Defense counsel objected to the State's motion to receive State's Exhibit 1 into evidence on the ground that it was inadmissible hearsay.[4] The prosecutor argued that the exhibit came within the hearsay exception of Hawai'i Rules of Evidence (HRE) Rule 802.1. The court overruled defense counsel's objection and received the exhibit.

Officer Jimmy Gapero testified that he received an assignment from police dispatch regarding reported abuse. As he proceeded to the address, dispatch informed him that "the responsible party had left the residence in a white truck headed to work" and gave him a license plate number for the vehicle. The officer saw the vehicle, stopped it, and identified Defendant as the driver of the vehicle. The officer testified Defendant said that "nothing happened." Defendant told him that he was "at home" sleeping prior to going to work, that the "kitchen was messy," but because his wife "continued" the "discussion," Defendant "just got up and left."

At trial, Defendant testified that his wife was "screaming" at him "because of the . . . kitchen[.]" Judith "came to the bed yelling" as he was trying to sleep. He told her he wanted to sleep, but she told him he'd "bet-

> Q. [DEFENSE COUNSEL] Ms. Tomas, so what you're saying is that when you filled out this form, you said these things because you were angry at your husband; is that right?
> A. [JUDITH] Yes.
> Q. And you were angry at him not because he hurt you; is that right?
> A. That's right.
> Q. You were angry because he didn't clean up the kitchen?
> A. Yes.
> . . . .
> Q. Okay. And he didn't—he did not kick you; is that right?
> A. Right.

4. Defense counsel objected to admission of Exhibit 1 as follows:

> [DEFENSE COUNSEL]: We would object, your Honor, as hearsay.
> [PROSECUTOR]: Your Honor, it falls within the exception of 802.1 as provided in the Hawaii Rules of [E]vidence. It says sworn or signed inconsistent statement that—being under 1(b)—has been reduced to writing or signed or otherwise adopted by the declarant.
> THE COURT: [Defense counsel]?
> [DEFENSE COUNSEL]: Well, she has already explained why she wrote it, your Honor.
> THE COURT: Objection is overruled. . . .

ter ... go and clean the mess[.]" When Judith refused his offer to clean the kitchen "early tomorrow[,]" she "ke[pt] on screaming" so he decided to go to work. He testified that he pushed her "lightly" and told her he was going to work. When Judith replied that she was "going to call the cops on [him]," Defendant "told her [to] go ahead[.]" He maintained, "I didn't do nothing [sic] to her."

Defendant denied hurting his wife and stated that he did not notice any injury, only that his wife was "just hyper" and "very, very upset." On cross-examination, Defendant maintained that he only gave his wife a "[s]light push" and denied causing any of the injuries described in the form.

On redirect examination, Defendant explained that when he pushed Judith, he "wasn't mad at all[,]" but was feeling "surprised because she was screaming" at him. Judith knew that Defendant "work[ed] early in the morning" and that their condominium had a "rule that at 10:00 no yelling, no screaming[.]" Defendant did not want his neighbor "to call the cops on [them] because that's a bad reputation [sic] ...."

In closing argument, the prosecutor urged the court to "put more credence on State's Exhibit 1" than Judith's trial testimony, because the exhibit was a handwritten form "filled out" on the date of the alleged incident "shortly after" it occurred, "as opposed to today which is about a month afterward." Furthermore, the prosecutor contended the exhibit constituted "substantive evidence that there was more than a light push."

Defense counsel argued that the exhibit was a "statement written by somebody in anger" and that Judith "admitted that she was angry" and had "disavowed" her prior statement. Defense counsel also asserted that the evidence was insufficient because the prosecutor had not shown any "physical evidence of any kind of abuse, no evidence

noted by a police officer, no evidence anywhere of any physical injury, no nothing, no bruises, no redness."

The prosecutor responded that State's Exhibit 1 was "substantive evidence" which did "depict injury and evidence[.]" The prosecutor stressed that the case was "a classic example" of why "the voluntary statement form[s]" were necessary. According to the prosecutor, the forms were admissible as substantive evidence "for the very reason we see here today, that wives or spouses, by the time of trial [their] stories aren't always the same as the events that happened that night."

In finding Defendant guilty as charged, the court explained it found "more credibility in [State's Exhibit 1] the voluntary statement form" and that the form was "effectively used to impeach the testimony of [Judith]." Judgment was entered accordingly on June 28, 1993.

## II.

■ Preliminarily, we note Defendant requested the family court to make findings in support of its determination of guilt. Despite this request, there are no written findings in the record or in the judgment filed on June 28, 1993. Hawaiʻi Family Court Rules (HFCR) Rule 52(a) required the family court in the instant case to enter its findings.[5] *Mark v. Mark*, 9 Haw.App. 184, 192, 828 P.2d 1291, 1296 (1992). Because on its face HFCR Rule 52(a) is similar to Hawaiʻi Rules of Civil Procedure (HRCP) Rule 52(a), decisions construing HRCP 52(a) are an aid in construing HFCR Rule 52(a). This court has stated that "[w]hile HRCP Rule 52(a) should be strictly followed, findings of fact by the circuit court are not jurisdictional and the appellate court may·proceed where the record is clear and findings are unnecessary." *Richards v. Kailua Auto Mach. Serv.*, 10

---

5. Hawaiʻi Family Court Rules (HFCR) Rule 52 provides in pertinent part:

**Rule 52. FINDINGS BY THE COURT.**
   (a) **Effect.** In all actions tried in the family court, the court may find the facts and state its conclusions of law thereon or may announce or write and file its decision or "decision and order" and direct the entry of or enter the

appropriate decree or order; except *upon notice of appeal filed with the court, the court shall enter its findings of fact and conclusions of law where none has been entered,* unless the written decision or "decision and order" of the court contains findings of fact and conclusions of law....
   (Emphasis added.)

Haw.App. 613, 621, 880 P.2d 1233, 1238 (1994). Hence, we may waive the family court findings required under HFCR Rule 52(a) "where the record is clear and such findings are unnecessary to a determination of the issues on appeal." *Id.* (waiving findings of fact required under Rules 52(a) and (c) of the District Court Rules of Civil Procedure). *Accord Hussey v. Hussey,* 77 Hawai'i 202, 206, 881 P.2d 1270, 1274 (App.1994). From ·the record provided, we are able to determine this appeal without written findings.

Also, the State complains that Defendant's opening brief was late. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b) requires the appellant to file an opening brief "[w]ithin 40 days after the filing of the record on appeal." The record on appeal in the instant case was filed on September 7, 1993 and Defendant's opening brief was due on or by Monday, October 18, 1993 (October 17th, the fortieth day, fell on a Sunday). Defendant filed an opening brief on October 20, 1993. Defendant was not notified by the clerk pursuant to HRAP Rule 30.[6] We excuse Defendant's late filing.

### III.

### A.

▆ To establish the offense of abuse of family and household members under HRS § 709–906(1), the prosecution must prove two material elements beyond a reasonable doubt: (1) the defendant physically abused either a family or household member; and (2) the defendant did so intentionally, knowingly, or recklessly. *State v. Eastman,* 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996); *see also State v. Canady,* 80 Hawai'i 469, 475, 911 P.2d 104, 110 (App.1996) (internal quotation marks and citation omitted) (stating that since HRS § 709–906 "does not designate the requisite state of mind attendant to the offense of physical abuse of a household member[,] . . . that element is established if . . . a

person acts intentionally, knowingly, or recklessly.")

We have held that to "physically abuse" someone under HRS § 709–906(1) "means to maltreat in such a manner as to cause injury, hurt or damage to that person's body." *State v. Nomura,* 79 Hawai'i 413, 416, 903 P.2d 718, 721 (App.), *cert. denied,* 80 Hawai'i 187, 907 P.2d 773 (1995); *State v. Ornellas,* 79 Hawai'i 418, 421, 903 P.2d 723, 726 (App.), *cert. denied,* 80 Hawai'i 187, 907 P.2d 773 (1995). There is no dispute that the injuries described in Judith's written statement, if actually inflicted, constituted physical abuse under HRS § 709–906(1). We examine, then, the effect to be given Judith's written statement.

### B.

In *Eastman,* 81 Hawai'i at 136, 913 P.2d at 62, the Hawai'i Supreme Court stated that under HRE Rule 802.1(1)(B), Hawai'i "allows the substantive use of prior inconsistent witness statements that have been reduced to writing and have been signed, adopted or approved by the declarant." (Citations omitted.); *See also State v. Zukevich,* 84 Hawai'i 203, 209, 932 P.2d 340, 346 (App.1997); *Canady,* 80 Hawai'i at 480, 911 P.2d at 115. HRE Rule 802.1(1)(B) states in relevant part:

> The following statements previously made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule:
>
> (1) Inconsistent statement. *The declarant is subject to cross-examination concerning the subject matter of the declarant's statement, the statement is inconsistent with the declarant's testimony,* the statement is offered in compliance with rule 613(b), and the statement was:
>
> . . .

---

**6.** Hawai'i Rules of Appellate Procedure (HRAP) Rule 30 provides in pertinent part:

> When the brief for appellant is not filed within the time required, the clerk shall forthwith give notice to counsel for the parties that

the matter will be called to the attention of the court on a day certain for such action as the court deems proper, and the appeal may be dismissed. . . .

(B) *Reduced to writing and signed* or otherwise adopted or approved by the declarant;

(Emphases added.)

■ Hence, before a prior inconsistent statement can be admitted as substantive evidence under HRE Rule 802.1(1)(B), the following foundational requirements must be met:

(1) a witness must testify about the subject matter of his or her prior statements so that the witness is subject to cross-examination concerning the subject matter of those prior statements; (2) the witness's prior statements must be inconsistent with his or her testimony; (3) the prior inconsistent statements must be reduced to writing and signed or otherwise adopted or approved by the witness; (4) the prior inconsistent statements must be offered in compliance with HRE Rule 613(b), which requires that, on direct or cross-examination, the circumstances of the prior inconsistent statements have been brought to the attention of the witness, and the witness has been asked whether he or she made the prior inconsistent statements.

*Eastman*, 81 Hawai'i at 137, 913 P.2d at 63; *Zukevich*, 84 Hawai'i at 209, 932 P.2d at 346; *see also Canady*, 80 Hawai'i at 480–81, 911 P.2d at 115–16. Those four requirements were satisfied in this case.

First, Judith testified about the subject matter referred to in her prior written statement. On the night in question, Judith testified she was "very upset and very angry and frustrated" because the house and the kitchen were "a mess." She stated that she "was probably screaming." After Defendant woke up, Judith recounted she and Defendant "started arguing" and then Defendant "just pushed [her]" on her shoulder with "[j]ust his hands" and told her "to stop screaming." Then, Defendant "left for work." On cross-examination, Judith testified that she was angry at Defendant because he "didn't clean up the kitchen" and not because he had "hurt" her. She also testified that Defendant did not kick her.[7] Thus, the trial court, as the trier of fact, had the opportunity to hear Judith's testimony and observe her demeanor and, thus, was free to determine whether to credit her prior written statement, rather than her trial testimony, as being truthful.

Second, Judith's written statement was inconsistent with her testimony. In contrast to her testimony, the written statement related that she was "slapped twice on shoulder (right), [and] kicked on right butt with pain even after."

Third, Judith's written statement was reduced to writing and signed by Judith on the evening of the incident.

Fourth, the prosecution asked Judith whether she recalled filling out the form the police officers gave her. Judith recalled filling out the form but claimed she "just filled it up because [she] was angry" and that she "made it up."

Thus, Judith's written statement was properly admitted "as an exception to the hearsay rule under HRE Rule 802.1 for 'substantive use' at trial." *Zukevich*, 84 Hawai'i at 210, 932 P.2d at 347; *see also Eastman*, 81 Hawai'i at 137, 913 P.2d at 63.

### IV.

#### A.

Defendant's point on appeal is that a prior inconsistent statement unsupported by any other corroborating evidence [8] is insufficient

---

7. The first of four requirements set forth in *State v. Eastman*, 81 Hawai'i 131, 913 P.2d 57 (1996) appears to assume that discrepancies between the prior statement and the witness' testimony will be explored on cross-examination. Because the complaining witness, Judith, was the witness recanting the prior statement, the discrepancy will likely be explored on direct or redirect examination, as it was here. The central proposition in Hawai'i Rules of Evidence (HRE) Rule 802.1(1)(B) is that the witness be subject to examination on the subject matter which gives rise to the discrepancy, *State v. Canady*, 80 Hawai'i 469, 480–81, 911 P.2d 104, 115–16 (App.1996). Thus, the point at which such examination takes place is not material as long as the party objecting to the receipt of the prior statement is allowed the opportunity to examine the witness on the subject matter of the statement.

8. We are not faced here with a statute which by its terms requires corroboration in order to convict a defendant of the crime charged.

to sustain a conviction for abuse of family and household members. Defendant relies on cases from other jurisdictions for the proposition "that when an essential element of an offense is based solely upon a prior inconsistent statement of a witness who repudiates the statement on the stand, that statement cannot support a conviction unless it is corroborated by some other independent evidence."

The principal case Defendant relies on is *United States v. Orrico,* 599 F.2d 113 (6th Cir.1979), where the defendant was convicted of transporting fraudulent checks in interstate commerce. In *Orrico,* one witness had given a signed written statement and the other witness had given testimony before a grand jury. *Id.* at 115–16. At trial the statements were received into evidence although both witnesses professed to remember nothing of the events which had occurred five years before. *Id.* The *Orrico* court reversed and remanded for a judgment of acquittal, on the ground that the use of prior inconsistent statements as the sole evidence of a central element of the crime charged was insufficient evidence. *Id.* at 119.

> [W]hen such evidence is the only source of support for the central allegations of the charge, especially when the statements barely, if at all, meet the minimal requirements of admissibility, we do not believe that a substantial factual basis as to each element of the crime providing support for a conclusion of guilt beyond reasonable doubt has been offered by the Government.

*Id.* at 118 (citation omitted). The *Orrico* court reasoned that " '[i]t is doubtful ... that in any but the most unusual case, a prior inconsistent statement alone will suffice to support a conviction since it is unlikely that a reasonable juror could be convinced beyond a reasonable doubt by such evidence alone.' " *Id.* (quoting 4 Weinstein's Evidence 801–74).

Unlike the witnesses in *Orrico,* however, the defense in the instant case had an opportunity to cross-examine Judith on her prior statement because Judith could remember the circumstances of the event in question. Judith acknowledged at trial that the statement was in her handwriting and confirmed her signature. Thus, her statement met the requirements of admissibility under HRE Rule 802.1(1)(B), unlike the statements in *Orrico,* which "barely, if at all, m[et] the minimal requirements of admissibility[.]" *Id.* at 118.

While the *Orrico* decision may be justified on the basis that the prior statements were unreliable because the witnesses could not be examined on the subject matter of the statements, several states have adopted the ultimate holding in *Orrico* and held as a matter of law that an uncorroborated prior inconsistent statement alone, whether sworn or unsworn, is insufficient to sustain a conviction when it is recanted at trial by the declarant. *Brower v. State,* 728 P.2d 645 (Alaska.Ct.App.1986) (grand jury testimony of sexual assault victim); *State v. Moore,* 485 So.2d 1279 (Fla.1986) (grand jury testimony of eyewitnesses to murder); *State v. White Water,* 194 Mont. 85, 634 P.2d 636 (1981) (written statement of sex offense victim taken by sheriff in sheriff's handwriting); *State v. Pierce,* 906 S.W.2d 729 (Mo.Ct.App.1995) (rape victim's out-of-court statement to a social worker); *State v. Ramsey,* 782 P.2d 480 (Utah 1989) (out-of-court statement of sexual abuse victim to social worker).

The rationale underlying this restrictive rule appears to be the concern that "the risk of convicting an innocent accused is simply too great when the conviction is based entirely on prior inconsistent statements." *Moore,* 485 So.2d at 1281. It is said that such a statement, although admissible as substantive evidence, lacks "adequate safeguards to assure reliability" and that a conviction based solely on it would "fall[ ] short of ... due process protection." *Pierce,* 906 S.W.2d at 735.

### B.

New Jersey and Vermont have adopted the language of Federal Rules of Evidence (FRE) Rule 801(d)(1)(A)[9] which, like HRE

---

**9.** Both New Jersey and Vermont have adopted Federal Rules of Evidence (FRE) Rule 801(d)(1)(A) "virtually verbatim[.]" Stanley A. Goldman, *Guilt by Intuition: The Insufficiency of*

Rule 802.1(1)(B), is concerned with the use of prior inconsistent statements as substantive evidence at trial.[10] These two state jurisdictions allow a conviction to rest on an uncorroborated, prior inconsistent statement if supported by certain enumerated indicia of reliability beyond the "oath" requirement set forth in FRE Rule 801(d)(1)(A).

In *State v. Mancine*, 124 N.J. 232, 590 A.2d 1107, 1119 (1991), the New Jersey Supreme Court adopted the following rule:

*[S]ubstantive elements of a criminal charge may be proven through a prior inconsistent statement alone, provided that the statement was made under cir-*

*cumstances supporting its reliability and the defendant has the opportunity to cross-examine the declarant.* For a statement that meets the requirements of *Evidence Rule* 63(1)(a) [11] and one that after a Rule 8 hearing [12] the court, in evaluating the *A. Gross* factors,[13] finds by a preponderance of evidence to be reliable, evidence directly or indirectly corroborative of the substantive facts is helpful but not necessary. A court should weigh substantive evidence found in a prior inconsistent statement on the same scale as any other evidence when determining whether sufficient evidence to support a guilty verdict exists.

*Prior Inconsistent Statements To Convict*, 65 N.C.L. Rev 1, 45 (1986).

> FRE Rule 801(d)(1)(A) states in pertinent part:
> (d) Statements which are not hearsay. A statement is not hearsay if
> (1) Prior statement by witness. The declarant testifies at the trial or hearing, and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition....

10. While FRE Rule 801(d)(1)(A) requires that the declarant of a prior statement "be subject to cross-examination concerning the statement," HRE Rule 802.1(1), our analogue to FRE Rule 801(d)(1)(A), requires that the " 'declarant [be] subject to cross-examination concerning *the subject matter* of the declarant's statement.' " *Canady*, 80 Hawai'i at 479, 911 P.2d at 114 (emphasis in text). Thus, we have held that HRE Rule 802.1(1) requires as a guarantee of trustworthiness, that the declarant "be subject to cross-examination about the subject matter of the prior statement ... allowing the trier of fact to meaningfully compare the prior version of the event with the version recounted at trial." *Id.* at 480–81, 911 P.2d at 115–16. We have concluded that HRE Rule 802.1(1), in contrast to FRE Rule 801(d)(1)(A), "requires more of the [declarant] than just that he or she be 'placed on the stand, under oath and respond [] willingly to questions.' " *Id.* at 480, 911 P.2d at 115 (quoting *U.S. v. Owens*, 484 U.S. 554, 561, 108 S.Ct. 838, 844, 98 L.Ed.2d 951 (1988)).

11. New Jersey Evidence Rule 63(1)(a) allows the use of prior inconsistent statements as substantive evidence as follows:

> "A statement is admissible if previously made by a person who is a witness at a hearing, provided it would have been admissible if made by him while testifying and the statement:
> (a) Is inconsistent with his testimony at the hearing and is offered in compliance with Rule 22(a) and (b); however, when the statement is offered by the party calling the witness it shall

> be admissible only if, in addition to the foregoing requirements, it (i) is contained in a sound recording or in a writing made or signed by the witness in circumstances establishing its reliability or (ii) was given under oath subject to the penalty of perjury...."

*State v. Mancine*, 124 N.J. 232, 590 A.2d 1107, 1115 (1991) (quoting N.J.Evidence Rule 63(1)(a)).

12. An "Evidence Rule 8 hearing" appears to be a hearing conducted at either the beginning of trial or pre-trial to determine the admissibility of evidence. *Mancine*, 590 A.2d at 1112.

13. According to the *Mancine* court, other factors a court should consider to evaluate and examine a statement's reliability are

> "(1) the declarant's connection to and interest in the matter reported in the out-of-court statement, (2) the person or persons to whom the statement was given, (3) the place and occasion of giving the statement, (4) whether the declarant was then in custody or otherwise a target of the investigation, (5) the physical and mental condition of the declarant ·at the time,(6) the presence or absence of other persons, (7) whether the declarant incriminated himself or sought to exculpate himself by his statement, (8) the extent to which the writing is in the declarant's hand, (9) the presence or absence, and the nature of, any interrogation, (10) whether the offered sound recording or writing contains the entirety, or only a portion [or a] summary, of the communication, (11) the presence or absence of any motive to fabricate, (12) the presence or absence of any express or implicit pressures, inducement or coercion for making the statement, (13) whether the anticipated use of the statement was apparent or made known to the declarant, (14) the inherent believability of the statement, and (15) the presence or absence of corroborating evidence."

*Mancine*, 590 A.2d at 1115 (quoting *State v. A. Gross*, 121 N.J. 1, 577 A.2d 806 (1990)).

*Id.* 590 A.2d at 1119 (emphasis and footnotes added). The *Mancine* court affirmed the defendant's conviction, although the substantive evidence primarily supporting defendant's convictions was a witness's recanted prior inconsistent statement. The court found sufficient evidence to sustain the conviction because the statement had "intrinsic and extrinsic indicia of reliability apart from the substance it contain[ed]." *Id.* at 1118. Finding it unnecessary to adopt "a *per se* rule barring a conviction based solely on evidence obtained from a prior inconsistent statement[,]" *id.* at 1117, the court ruled that, "the substantive elements of a criminal charge may be proven through a prior inconsistent statement alone, provided that the statement was made under circumstances supporting its reliability and the defendant has the opportunity to cross-examine the declarant." *Id.* at 1119 (emphasis added).

In *State v. Robar*, 157 Vt. 387, 601 A.2d 1376 (1991), the Vermont Supreme Court adopted New Jersey's approach, characterizing it as a "variant of the *Orrico* rule that allows a conviction to rest on an uncorroborated, prior inconsistent statement as long as the statement meets certain standards of reliability." *Id.* 601 A.2d at 1379 (citing *Mancine*, 590 A.2d at 1119). Explaining that it found the reasoning of *Orrico* persuasive, the court nevertheless, "share[d] with the New Jersey Supreme Court the concern that the result [there] may be overly rigid in circumstances where the prior statement is particularly reliable." *Id.* 601 A.2d at 1380.

The *Robar* court concluded that a witness's prior testimony was insufficient to sustain the defendant's conviction in the case before it, because the prior testimony was "the only evidence tying [the] defendant to the crime" and the testimony did not meet the test for reliability laid out in *Mancine*. *Id.* 601 A.2d at 1380–81. The court held that, "[t]he State cannot meet its burden of proof if the sole evidence upon which conviction is based is past recollection recorded or a prior inconsistent statement, unless the prior statement meets specific standards of reliability." *Id.* at 1380.

C.

We are not unmindful of the distrust with which a prior statement, recanted at trial, is viewed. Authorities have questioned the use of prior inconsistent statements as the sole basis to support a conviction.

> Theoretically, a party may be able to make out a prima facie case even if the only evidence is a previous inconsistent statement of this type. Under the former practice, if the only evidence of some essential fact is such a previous statement, the party's case falls. *In a criminal prosecution, however, it is unlikely that a prior inconsistent statement alone will suffice to support a conviction, since a reasonable juror usually could not be convinced beyond a reasonable doubt by such evidence alone.*

4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 801(d)(1)(A)[01], at 141–42 (1995) (emphasis added) (footnotes and internal quotation marks omitted).

The drafters of FRE Rule 801(d)(1)(A), which as we have said is analogous to our HRE Rule 802.1(1), apparently manifested initial concern on this issue also. " 'It would appear that some of the opposition to this Rule is based on a concern that a person could be convicted solely upon evidence admissible under this Rule.... Factual circumstances could well arise where, if this were the sole evidence, dismissal would be appropriate.' " Stanley A. Goldman, *Guilt by Intuition: The Insufficiency of Prior Inconsistent Statements To Convict*, 65 N.C.L.Rev. 1, 16 n. 57 (1986) (quoting S.Rep. No. 1277, 93rd cong., 2d Sess. 16 n. 21, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7051, 7063 n.21).

Professor Goldman has noted that courts have improperly equated substantive admissibility of a prior inconsistent statement with the statement's sufficiency to convict and that convictions based solely on prior inconsistent statements raise serious due process and confrontation clause issues. Goldman, *supra*, 65 N.C.L.Rev. at 16, 36. Thus, Professor Goldman has proposed that a prior inconsistent statement be received in evidence only if the accused had the opportunity to cross-examine the witness at the time the statement was made:

The goals of accuracy and fairness that underlie confrontation and due process can be met by the following standard: A conviction can be based solely on a prior inconsistent statement only if the statement was subject to cross-examination by the defendant at the time it was made, or when the witness was affirming its truth, *and* there is some reasonable factual basis appearing in the record to credit the prior statement over the present in-court testimony.

*Id.* at 40 (Emphasis in original).

■ But in our jurisdiction, HRE Rule 802.1(1) expressly permits substantive use of a prior written statement signed by a witness who gives trial testimony inconsistent with that statement as an "exception" to the hearsay rule provided that, as a foundation for the admission of the prior statement and a guaranty of its trustworthiness, the witness is "capable of testifying substantively [at trial] about the event [in the written statement]." *Canady,* 80 Hawai'i at 480, 911 P.2d at 115. As a result, HRE Rule 802.1(1) "exclude[s] the prior [inconsistent] statements of a witness who [can] no longer remember the underlying events described in the statement" because under such circumstances, "the trier of fact [could not] meaningfully compare the prior version of the event with the version recounted at trial[.]" *Id.* We have held thus, that the receipt into evidence of a signed prior inconsistent statement by a witness who was capable of testifying substantively about the events in the prior written statement and was subject to cross-examination at trial did not violate the confrontation clauses of the United States and Hawai'i constitutions. *Zukevich,* 84 Hawai'i at 209, 932 P.2d at 346.

### V.

We believe that the issue of whether a prior inconsistent statement is admissible in evidence is an issue separate from the issue of whether such a statement may suffice to support a conviction. The former involves, as the cases discussed have indicated, the determination of the trustworthiness or reliability of the statement as garnered from surrounding circumstances. The latter, on the other hand, involves the ordinary process of fact finding at the trial level and the customary application of the substantial evidence standard at the appellate level.

### A.

As Professor Goldman notes, Hawai'i is one of two states which permits substantive use of a written and signed statement [14] and one of six states following the federal rule "with some modifications." Goldman, *supra,* 65 N.C.L.Rev. at 45.[15]

■ While our approach is similar to that of New Jersey and Vermont, it is sufficient for purposes of admissibility in our

14. The Illinois Code of Criminal Procedure contains a provision similar to HRE Rule 802.1.
   The Illinois Code of Criminal Procedure substantively admits prior inconsistent statements in criminal but not civil cases when the prior statement was either made under oath or, though not made under oath, it is a statement that
   narrates described or explains an event or condition of which the witness had personal knowledge, and
   (A) the statement is proved to have been written or signed by the witness, or
   (B) the witness acknowledged under oath the making of the statement...
   (C) the statement is proved to have been accurately recorded by a tape recorder, videotape, recording, or any other similar electronic means of sound recording.
   Goldman, *supra,* 65 N.C.L.Rev. at 45 (quoting Ill.Ann.Stat. ch. 38, para. 115–10.1(2) (Smith-Hurd Supp.1986)).

15. HRE Rule 802.1(1) is comparable to the Federal Rule, but reorganizes a number of the provisions. The Hawai'i rule provides for the substantive use of prior inconsistent statements as an exception to the hearsay rule, rather than as an exemption from the hearsay rule. The Hawai'i rules also provide that the prior statement, even if not made under oath, can still be substantively admitted if it was
   (B) Reduced to writing and signed or otherwise adopted or approved by the declarant; or
   (C) Recorded in substantially verbatim fashion by stenographic, mechanical, electrical, or other means contemporaneously with the making of the statement
   . . . .
   Goldman, *supra,* 65 N.C.L.Rev. at 45 (quoting HRE Rule 802.1(1)(B),(C)).

jurisdiction that, as in this case, a prior inconsistent statement be in writing and signed by the witness and that the witness be capable of testifying on the subject matter set forth in the statement. *Canady*, 80 Hawai'i at 480, 911 P.2d at 115 (written, signed statement and opportunity to cross-examine a witness about the material events in a prior statement are "twin guarantees of trustworthiness"). We have not expanded the indicia of reliability beyond the requirements set forth in HRE Rule 802.1(1). For constitutional purposes, "[r]eliability [of a statement] is shown if the evidence falls within a firmly rooted hearsay exception or upon a showing of particularized guarantees of trustworthiness." *State v. Moore*, 82 Hawai'i 202, 224, 921 P.2d 122, 144 (1996) (citations and internal quotation marks omitted); *Zukevich*, 84 Hawai'i at 209, 932 P.2d at 346. We have held, thus, that the allowance of prior signed inconsistent statements, as well as prior "adopted" or recorded inconsistent statements as substantive evidence is justified because the "statements' trustworthiness was assured on two grounds: (1) the statements could 'fairly be attributed' to the witness; and (2) the witnesses themselves were 'subject to cross examination concerning the subject matter of the statements.'" *Canady*, 80 Hawai'i at 480, 911 P.2d at 115.

### B.

■ Logically, then, if a prior inconsistent statement may be admitted as substantive evidence, it must be afforded the same effect as evidence derived directly from witness testimony at trial. Because the HRE allow certain prior inconsistent statements to be used "substantively for the truth of [their] contents", Commentary to HRE Rule 802.1 (1993), such statements would be evaluated under the ordinary fact finding process at trial. As in all instances involving discrepancies in the testimony of a witness, the weight to be given a witness's prior inconsistent statement is committed to the discretion of the fact finder. *See* HRE Rule 1102 (The court "shall . . . inform the jury that they are the exclusive judges of all questions of fact and the credibility of the witnesses.").

Thus, "[w]ith respect to the truth of the prior statement, the [fact finder] has the opportunity to observe the declarant as he [or she] may repudiate or vary his [or her] former statement, and as he [or she] is cross-examined. Thus, the fact finder can determine whether to believe the present testimony, the prior testimony—or neither." *Gibbons v. State*, 248 Ga. 858, 286 S.E.2d 717, 721 (1982); *see also State v. Clark*, 83 Hawai'i 289, 303, 926 P.2d 194, 208 (1996); *Eastman*, 81 Hawai'i at 139, 913 P.2d at 65.

Generally, then, in the event that a prior inconsistent statement of a witness is received under HRE Rule 802.1(1), the defendant would be entitled to have the jury in a jury trial instructed on standard criminal instructions bearing upon the credibility of a witness and the evaluation of a witness's inconsistent statements.[16]

---

16. The following Hawaii [Hawai'i] Standard Jury Instructions Criminal (December 1991) (HAWJIC) are pertinent and would usually be given a jury in a criminal case:

3.08 **Weight of the Evidence**

While you must consider all of the evidence in determining the facts in this case, this does not mean that you are bound to give every bit of evidence the same weight. You are the sole and exclusive judges of the effect and value of the evidence and of the credibility of the witnesses.

3.09 **Credibility and Weight of Testimony**

It is your exclusive right to determine whether and to what extent a witness should be believed and to give weight to his or her testimony accordingly. In evaluating the weight and credibility of a witness's testimony, you may consider the witness's appearance and demeanor; the witness's manner of testifying; the witness's intelligence; the witness's candor or frankness, or lack thereof; the witness's interest, if any, to a party; the witness's temper, feeling, or bias, if any has been shown; the witness's means and opportunity of acquiring information; the probability or improbability of a witness's testimony; the extent to which the witness is supported or contradicted by other evidence; the extent to which the witness has made contradictory statements, whether in trial or at other times; and all other circumstances surrounding the witness and bearing upon his or her credibility.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. In weighing the effect of inconsistencies or discrepancies, whether they occur within one witness's testimony or as between different witnesses, consider whether they concern matters of importance or only matters of unimportant detail,

■ As we have indicated, facts asserted in a signed or adopted statement and offered in compliance with HRE Rule 613(b) and as substantive evidence under HRE Rule 802.1(1) are equivalent, under our rules, to facts asserted in testimony given under oath.[17] Had Judith directly testified under oath to the injuries described in her written statement, her testimony could suffice to establish her injuries and the manner in which they were incurred. We have held, thus, that as in any case involving the issue of bodily injury, pain and injury incurred in a physical abuse case may be established by lay testimony. *State v. Tanielu,* 82 Hawai'i 373, 379, 922 P.2d 986, 992 (App.1996) (holding that testimony of police officer sufficed to establish evidence of bodily injury for purposes of prosecution of abuse of family member); *see also Cozine v. Hawaiian Catamaran, Ltd.,* 49 Haw. 77, 113, 412 P.2d 669, 691 (1966); Commentary to HRE Rule 701 (1993) [18]. Hence, a witness's prior written inconsistent statement, which must be accorded the same treatment as trial testimony given under oath, would also suffice to establish, if believed, a charge of physical abuse. Unless there is a specific demonstrable need for expert testimony under HRE Rule 702,[19] such as where the trier of fact must be aided in understanding the mechanics of the injury, the testimony of the injured person may suffice to establish the bodily injury and the manner in which it was inflicted. *Tanielu,* 82 Hawai'i at 379, 922 P.2d at 992.

## C.

■ It follows that prior inconsistent statements admitted as substantive evidence at trial must also survive the rigors of the substantial evidence test on appeal. As in other criminal cases, in our review of the sufficiency of the evidence, we must consider whether there is substantial evidence in the record to support the conclusion of guilt. *Eastman,* 81 Hawai'i at 135, 913 P.2d at 61 (citations omitted).

> The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.
>
> "Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational infer-

and whether they result from innocent error or deliberate falsehood.

3.10 **Rejecting Testimony**

If you find that a witness has deliberately testified falsely to any important factor or deliberately exaggerated or suppressed any important fact, then you may reject the testimony of that witness except for those parts which you nevertheless believe to be true.

*See State v. Toro,* 77 Hawai'i 340, 348, 884 P.2d 403, 411 (App.1994) (HAWJIC "is a product of the cooperative effort of judges and attorneys to encompass and to standardize rules of law in jury instructions, and is widely used by the circuit courts. However, as a general proposition, the circuit courts are not required to give such instructions[ ]" because "[t]he introduction to the HAWJIC indicates that 'nothing [therein] contained shall be construed as an approval by the Supreme Court of the State of Hawaii [Hawai'i] of the substance of any of said instructions.' ").

17. If a statement "is offered in compliance with rule 613(b)," *its substantive admissibility* under HRE Rule 802.1(1) is dependent only upon the statement falling within the definition of subpart (A) (statements given under oath), subpart (B) (signed, adopted, or approved statements), or subpart (C) (substantially verbatim recordings of oral statements). HRE Rule 802.1.

18. HRE Rule 701 provides:

**Rule 701 Opinion testimony by lay witnesses.** If the witness is not testifying as an expert, the witness'[s] testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue.

19. HRE Rule 702 allows a "witness qualified as an expert by knowledge, skill, experience, training, or education" to testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue[.]"

ences under the facts in evidence, including circumstantial evidence.

*Id.* (citations omitted).

The safeguard on appeal against "the risk of convicting an innocent accused[,]" *Moore,* 485 So.2d at 1281, as in other criminal cases, is the stringent scrutiny which the appellate courts must impose upon the record in applying the substantial evidence standard. *But see State v. Gabrillo,* 10 Haw.App. 448, 458 n. 6, 877 P.2d 891, 895 n. 6 (1994) (suggesting that "deference to the fact finder as the judge of the credibility of witnesses or weight of the evidence should not 'preclude ... [appellate] court from determining whether, as a matter of law, the evidence is such that reasonable [persons] should have a reasonable doubt as to an essential element of the crime for which the defendant was convicted.' ") (quoting *State v. Kekaualua,* 50 Haw. 130, 133–34, 433 P.2d 131, 133 (1967) (Levinson, J., concurring)).

Other jurisdictions have employed the same "substantial evidence" test which is used to review the sufficiency of evidence in criminal cases to determine the sufficiency of an uncorroborated prior inconsistent statement to support a conviction. *Ticey v. Peters,* 8 F.3d 498 (7th Cir.1993) (prior inconsistent statement sufficient evidence to support a conviction by a rational trier of fact); *Robar,* 601 A.2d at 1378 (in applying standard of "whether the evidence when viewed in the light most favorable to the state, is sufficient to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt[,]" evidence was legally insufficient where at trial witness could not recollect prior statement); *Mancine,* 590 A.2d at 1119 ("A court should weigh substantive evidence found in a prior inconsistent statement on the same scale as any other evidence when determining whether sufficient evidence to support a guilty verdict exists."); *Weeks v. State,* 187 Ga.App. 307, 370 S.E.2d 344, 345 (1988) (evidence was sufficient to enable any rational trier of fact to find defendant guilty of molesting ... stepdaughter based on stepdaughter's prior inconsistent statement).

## VI.

We conclude that there was substantial evidence to support the conclusion of the court.

In this instance, the form which Judith signed and completed on the evening in question named Defendant as the person who "physically hurt, harmed or abused" her by slapping and kicking her and that Judith's right shoulder and right "butt" hurt. In its oral findings at trial, the court stated that it did "not believe portions of both [Defendant's and Judith's] testimony" and instead, found "more credibility in the voluntary statement form." As to the circumstances surrounding the alleged abuse, both Defendant and Judith confirmed in their testimonies that Defendant and Judith argued about the messy kitchen, Judith was "screaming" and "very upset," Defendant was attempting to sleep because he had to leave for work early the next morning, and Defendant had physical contact with Judith.

The evaluation of the credibility of the witnesses' testimonies is committed to the fact finder and thus the court here was permitted to give less weight to Defendant's and Judith's trial testimony than it gave to Judith's written statement. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 117, 839 P.2d 10, 28 (1992) ("[A]n appellate court will not pass upon issues dependent upon credibility of witnesses[.]") Additionally, as we stated the injuries described on the form, if actually inflicted, would constitute physical abuse under HRS § 709–906(1). Hence, Judith's written statement, if believed, would be sufficient to sustain a charge of physical abuse. We also note as previously recounted that the testimony of both witnesses were in agreement about the circumstances surrounding the charged incident. Based on this record, we believe that the evidence "enabled a [person] of reasonable caution to support [the] conclusion" of guilt in this case. *Eastman,* 81 Hawai'i at 135, 913 P.2d at 61; *Gabrillo,* 10 Haw.App. at 460, 877 P.2d at 896.

We conclude then that an uncorroborated prior inconsistent statement of a fami-

ly or household member offered under HRE Rule 613 and HRE Rule 802.1 as substantive evidence of the facts stated therein may be sufficient, if believed, to establish physical abuse and the manner in which such abuse was inflicted in a prosecution for physical abuse of a family or household member under HRS § 709–906. Furthermore, we affirm that on appeal, a conviction based on such a statement is subject, as in all criminal cases, to the substantial evidence standard.

## VII.

Accordingly, the June 28, 1993 judgment is affirmed.